FILED

2022 Dec-23  PM 05:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| Alaska Air Group, Inc., *et al.*, <br><br>     Plaintiffs, <br><br> v. <br><br> Anthem, Inc., *et al.*, <br><br>     Defendants. | No. 2:21-cv-01209-RDP |
| JetBlue Airways Corporation, *et al.*, <br><br>     Plaintiffs, <br><br> v. <br><br> Anthem, Inc., *et al.*, <br><br>     Defendants. | No. 2:22-cv-00558-RDP |

<u>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**</u>

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................2

I.      Claims Must Be Dismissed If It Is Apparent from the Complaint that They Are
        Time-Barred. ...................................................................................................2

II.     It Is Apparent Tolling Did Not Begin Until November 2, 2020. ........................3

        A.      Class Action Tolling Applies Only to Members of Putative Classes. .....................3

        B.      Plaintiffs Did Not Become Members of a Putative Class in the MDL Until
                November 2, 2020. ...................................................................................5

                i.      Plaintiffs were not members of any putative class in the MDL
                        when the first action was filed on February 7, 2012. ...................5

                ii.     Plaintiffs did not become members of any putative class in the
                        MDL on some unknown date between 2014 and 2019. .............................7

                iii.    Plaintiffs became members of a putative class in the MDL only
                        upon the filing of the Fourth Amended Complaint on November 2,
                        2020. ...........................................................................9

III.    The Other Materials Plaintiffs Cite Are Irrelevant. ..........................................10

CONCLUSION ..........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Pipe & Constr. Co. v. Utah,*
    414 U.S. 538 (1974) ................................................................................................... passim

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................................. 2

*Berkery v. Verizon Commc'ns Inc.,*
    658 F. App'x 172 (3d Cir. 2016) ..................................................................................... 3, 4

*Brexendorf v. Bank of Am., N.A.,*
    319 F. Supp. 3d 1257 (M.D. Fla. 2018) ............................................................................. 2

*Carden v. Town of Harpersville,*
    2017 WL 4180858 (N.D. Ala. Sept. 21, 2017) ............................................................... 5, 8

*China Agritech, Inc. v. Resh,*
    138 S. Ct. 1800 (2018) .................................................................................................... 3, 5

*Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345 (1983) ............................................................ 5

*In re Currency Conversion Fee Antitrust Litig.,*
    2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ..................................................................... 9

*E.I. du Pont de Nemours & Co. v. Cullen,*
    791 F.2d 5 (1st Cir. 1986) .................................................................................................. 9

*Ganousis v. E.I. du Pont de Nemours & Co.,*
    803 F. Supp. 149 (N.D. Ill. 1992) ..................................................................................... 4

*Green v. Warden, U.S. Penitentiary,*
    699 F.2d 364 (7th Cir. 1983) ............................................................................................. 9

*Griffin v. Singletary,*
    17 F.3d 356 (11th Cir. 1994) ............................................................................................. 9

*Health All. Plan of Mich. v. BCBS Mich. Mut. Ins. Co.,*
    2017 WL 1209099 (E.D. Mich. Mar. 31, 2017) ................................................................ 8

*Henderson v. Reid,*
    371 F. App'x 51 (11th Cir. 2010) ...................................................................................... 2

*Heuer v. Nissan N. Am., Inc.,*
    2017 WL 3475063 (S.D. Fla. Aug. 11, 2017) ................................................................... 2

*In re Lehman Bros. Sec. & ERISA Litig.*,
    655 F. App'x 13 (2d Cir. 2016) ........................................................................2

*Matsushita Elec. Indus. Co. v. Epstein*,
    516 U.S. 367 (1996)...........................................................................................9

*McMilian v. AMC Mortg. Servs., Inc.*,
    560 F. Supp. 2d 1210 (N.D. Ala. 2008) ...........................................................2

*Miller v. Montgomery Cnty Bd. of Ed.*,
    2022 WL 1590473 (M.D. Ala. Jan. 10, 2022) ................................................10

*Northwestern Mut. Life Ins. Co. v. Valeant Pharms. Int'l, Inc.*,
    2019 WL 4278929 (D.N.J. Sept. 10, 2019) ......................................................2

*Raie v. Cheminova, Inc.*,
    336 F.3d 1278 (11th Cir. 2003) ........................................................................8

*In re Rail Freight Fuel Surcharge Antitrust Litigation (NO. II)*,
    2020 WL 5016922 (D.D.C. Aug. 25, 2020) .................................................2, 3

*Sawtell v. E.I. du Pont de Nemours & Co.*,
    22 F.3d 248 (10th Cir. 1994) ............................................................................4

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*,
    902 F.3d 735 (7th Cir. 2018) ............................................................................3

*In re Syntex Corp. Sec. Litig.*,
    95 F.3d 922 (9th Cir. 1996) ..............................................................................4

*Trondheim Cap. Partners LP v. Life Ins. Co. of Ala.*,
    2022 WL 893542 (N.D. Ala. Mar. 25, 2022) ...................................................2

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................................9

**Statutes & Rules**

15 U.S.C. § 15b..........................................................................................................1

Fed. R. Civ. P. 26(d)(1)...........................................................................................10

## INTRODUCTION

To rely upon class action tolling, an individual plaintiff must have been a member of a putative class in a prior class action.  Plaintiffs were not putative class members in any class action before the Fourth Amended Complaint was filed on November 2, 2020.  (MDL Dkt. 2616 at 1.)  The reason is simple:  the classes in the earlier Subscriber class complaints covered only entities "insured by" Blue Plans, but Plaintiffs here plead that they are "self-insured".  (Compl. ¶ 1 n.2.)  That makes all claims for damages before November 2, 2016 untimely.  15 U.S.C. § 15b.  Indeed, that is consistent with what this Court already ruled when approving the allocation of the Subscriber Settlement Fund.

Plaintiffs' opposition asks this Court to change the way class action tolling has worked since the Supreme Court created it in *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974).  Plaintiffs say that tolling begins once a defendant is "on notice" "of the inclusion of their claims" in the MDL.  (*AA* Opp. at 2-3, 7, 20.)[1]  That is not the rule.  Plaintiffs confuse one of the ***reasons*** tolling is allowed (defendants know whose claims are tolled based on the pleadings) with the ***standard for determining when*** tolling begins (plaintiff is included in a putative class).  As a standard, supposed "notice" to defendants is legally irrelevant.  Plaintiffs fail to explain how one would prove "notice" outside the four corners of the class action complaint.  Plaintiffs would turn the efficient *American Pipe* rule into an extraordinary source of confusion, rife with perverse incentives the Supreme Court has taken pains to remove from equitable tolling.  Plaintiffs' proposed rule must be rejected.  With that argument swept aside, Plaintiffs have no basis in law or fact to oppose dismissal of all damages claims before November 2, 2016.

---

[1] Citations to Plaintiffs' opposition briefs are to *Alaska Air* Dkt. 232 ("*AA* Opp.").  The points in this reply also respond to the nearly identical brief filed by Plaintiffs in the *JetBlue* action.  (*JetBlue* Dkt. 158.)

**ARGUMENT**

**I.    CLAIMS MUST BE DISMISSED IF IT IS APPARENT FROM THE COMPLAINT THAT THEY ARE TIME-BARRED.**

Plaintiffs' brief acknowledges that Rule 12(b)(6) dismissal is appropriate if it is "apparent from the face of the complaint that the claim is time-barred". (*E.g.*, *AA* Opp. at 3.) For example, if a complaint asserts claims that accrued outside "the longest statute of limitations applicable", and the plaintiff "fail[s] to plausibly allege any facts showing that [it] is entitled to equitable tolling", the claims "are time-barred". *Henderson v. Reid*, 371 F. App'x 51, 54 (11th Cir. 2010). Plaintiffs attempt to sow confusion by attempting to graft on an additional requirement: that it must "appear[] beyond a doubt that Plaintiffs can prove ***no set of facts*** that toll the statute". (*AA* Opp. at 3 (emphasis added).) But in *Bell Atlantic Corp. v. Twombly*, the Supreme Court rejected that language as confusing and unhelpful.[2] The "apparent from the face of the complaint" standard controls. (*Alaska Air* Dkt. 134 ("*AA* MTD") at 9-10.) Plaintiffs also suggest that statute of limitations dismissals are rare, but in fact, they are quite common.[3] Indeed, courts in this Circuit have dismissed purported opt-out claims as untimely under *American Pipe*. *See In re Lehman Bros. Sec. & ERISA Litig.*, 655 F. App'x 13, 14-16 (2d Cir. 2016).[4] This is just such a case.[5]

---

[2] 550 U.S. 544, 561-63 (2007) ("[T]he 'no set of facts' language has been questioned, criticized, and explained away long enough. . . . [A]fter puzzling the profession for 50 years, this famous observation has earned its retirement."). Plaintiffs' cases all quote that outdated language or predate *Twombly*. (*AA* Opp. at 3 n.3.)

[3] *See, e.g.*, *Trondheim Cap. Partners LP v. Life Ins. Co. of Ala.*, 2022 WL 893542, at *28 (N.D. Ala. Mar. 25, 2022); *McMilian v. AMC Mortg. Servs., Inc.*, 560 F. Supp. 2d 1210, 1221 (N.D. Ala. 2008); *Brexendorf v. Bank of Am., N.A.*, 319 F. Supp. 3d 1257, 1266-67 (M.D. Fla. 2018); *Heuer v. Nissan N. Am., Inc.*, 2017 WL 3475063, at *4 (S.D. Fla. Aug. 11, 2017).

[4] Plaintiffs claim that Defendants' authority did not address the specific circumstance of "pleading *American Pipe* tolling under federal law". (*AA* Opp. at 6 n.4.) Defendants cite these cases for the well-settled proposition that the statute of limitations is properly resolved at the motion to dismiss stage and claims should be dismissed insofar as they seek time-barred relief. (*AA* MTD at 9-10, 13-14.) That legal proposition is true regardless of whether the case involves *American Pipe* tolling. And courts have dismissed untimely claims in the specific context of *American Pipe* tolling. *See, e.g.*, *Northwestern Mut. Life Ins. Co. v. Valeant Pharms. Int'l, Inc.*, 2019 WL 4278929, at *12 (D.N.J. Sept. 10, 2019).

[5] In a "cf." citation, Plaintiffs point to *In re Rail Freight Fuel Surcharge Antitrust Litigation (NO. II)*, 2020

2

## II.   IT IS APPARENT TOLLING DID NOT BEGIN UNTIL NOVEMBER 2, 2020.

### A.   Class Action Tolling Applies Only to Members of Putative Classes.

Plaintiffs' brief confirms that their only basis for asserting claims prior to 2016 is their invocation of *American Pipe* tolling.  (*See AA* Opp. at 1.)  In *American Pipe*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all ***asserted members of the class*** who would have been parties had the suit been permitted to continue as a class action."  414 U.S. at 554 (emphasis added).  The Supreme Court created this equitable tolling doctrine to promote "efficiency and economy" because, without tolling, "[p]otential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable."  *Id.* at 553.  To solve this inefficiency, the Supreme Court set a clear rule:  "putative class members" have their claims tolled during the pendency of a class action.  *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806 (2018).  The complaint informs those in the putative class that their claims are tolled and do not require protective filings and "notifies the defendants not only of the substantive claims being bought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment".  *Am. Pipe*, 414 U.S. at 555.

There is no question under *American Pipe* whose claims are tolled:  only those of plaintiffs included in the complaint's alleged class(es).  *See, e.g.*, *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 742 (7th Cir. 2018) (no tolling when plaintiffs "were not 'asserted members of the class' defined in the original complaint and their claims were not encompassed by the original suit"); *Berkery v. Verizon Commc'ns Inc.*, 658 F. App'x 172, 174

---

WL 5016922 (D.D.C. Aug. 25, 2020) to suggest that, if some claims are timely, it is premature to narrow a damages class.  (*AA* Opp. at 3-4.)  But in that case, the defendants were "not prejudiced" by allegations that were merely peripheral.  *Id.* at *12-13.  Here, Plaintiffs acknowledge the practical implications are significant, including because the motion will determine which Plaintiffs will remain in the case.  (*AA* Opp. at 24 n.18.)  The ruling will also affect the scope of discovery in these actions.

(3d Cir. 2016) (no tolling when plaintiff was not a member in an earlier class action, even though defendant had served plaintiff with an erroneous notice stating the plaintiff was part of the class). Courts reject the "argument that the commencement of a class action suit satisfies the statute of limitations for all those who might subsequently participate in the suit" because the *American Pipe* "equitable tolling doctrine only tolls the statute of limitations for asserted class members." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935-36 (9th Cir. 1996); *see also Sawtell v. E.I. du Pont de Nemours & Co.*, 22 F.3d 248, 253 (10th Cir. 1994) (no tolling for New Mexico resident when complaint pleaded class of Minnesota residents, and New Mexico residents were not "asserted class members"). There is likewise no question under *American Pipe* when tolling begins: as soon as a complaint's asserted class includes the relevant plaintiff. 414 U.S. at 554.

Plaintiffs recognize that, under this clear standard, their claims were not tolled until they were named in a putative class for the first time in November 2020. As a result, they try to move the goalposts by arguing that *American Pipe* tolling exists whenever some loose concept of actual "notice" to the defendant of the potential for claims is satisfied.[6] (*E.g.*, *AA* Opp. at 2-3.) That is wrong. Plaintiffs and defendants are deemed to be on notice for purposes of class-action tolling of the claims of all putative class members, irrespective of either side's actual notice. *Ganousis v. E.I. du Pont de Nemours & Co.*, 803 F. Supp. 149, 156 (N.D. Ill. 1992) ("It must be remembered that the courts are dealing in fictions here—that the concepts on both sides involve constructive and not actual notice."). The doctrine is grounded in a complaint's allegations because putative class members need to be able to determine whether

---

[6] Plaintiffs misquote this Court in conflating the legal standard. They say, citing the Final Approval Order: "The Court further stated that the 'critical issue for purposes of tolling the statute of limitations' was whether Defendants were on notice of the claims being asserted." (*AA* Opp. at 18.) The Court never said that. Plaintiffs appear to refer to the statement that "[t]he critical issue *in Rule 15(c) determinations* is whether the original complaint gave notice to the defendant of the claim now being asserted". (MDL Dkt. 2931 at 61 (emphasis added).) But the Court was discussing relation back under Rule 15 (which, of course, expressly refers to "notice of the action"), not the tolling of the statute of limitations (which turns on who is named in a class-action complaint).

they can rely on a class action to protect their rights.  *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350, 352-53 (1983); *China Agritech*, 138 S. Ct. at 1808; *Griffin v. Singletary*, 17 F.3d 356, 360 (11th Cir. 1994).  Ability to rely on the class action cannot commence based on events that may be unknown to and unknowable by the plaintiff.  *See Am. Pipe*, 414 U.S. at 561-62 (Blackmun, J., concurring); *Crown, Cork & Seal Co.*, 462 U.S. at 352; *id.* at 354-55 (Powell, J., concurring).  Here, in fact, Plaintiffs argue that they "do not portend to know" facts related to when such notice existed.  (*AA* Opp. at 11 n.9.)  By setting an objective standard based on publicly filed claims, the *American Pipe* rule avoids disputes and uncertainty:  putative class members' claims are tolled; others' claims are not.  *See Carden v. Town of Harpersville*, 2017 WL 4180858, at *13 (N.D. Ala. Sept. 21, 2017) (Proctor, J.).  Here, the rule for tolling is clear:  Plaintiffs' claims were not tolled unless and until they were putative class members in an MDL complaint.

> **B.**   **Plaintiffs Did Not Become Members of a Putative Class in the MDL Until November 2, 2020.**

Plaintiffs allege "three plausible dates for the inclusion of the Plaintiffs in the Subscriber Class":  (1) February 7, 2012, when the first subscriber class action was filed; (2) sometime between 2014 and 2019, when parties discussed how ASO subscribers might be treated in a subscriber settlement; and (3) November 2, 2020, when the Fourth Amended Class Complaint was filed.  (*AA* Opp. at 2.)  Under *American Pipe*, November 2, 2020, is the only date on which Plaintiffs became members of a putative class in the MDL.

> i.    Plaintiffs were not members of any putative class in the MDL when the first action was filed on February 7, 2012.

Plaintiffs first argue their damages claims were tolled by the filing of the original class action complaint in the Subscriber Track of the MDL, *Cerven v. Blue Cross & Blue Shield*

*of North Carolina* ("*Cerven*"), 2:12-cv-04169-RDP (N.D. Ala.).  (*AA* Opp. at 2, 8-9, 19-20.)  As this Court has already decided, the *Cerven* complaint itself proves that wrong.

The *Cerven* complaint expressly limited its putative classes to fully-insured subscribers.  (*See Cerven* Dkt. 1 ¶¶ 20-21.)  The damages class pleaded in the *Cerven* complaint included only those who "paid health insurance premiums to BCBS-NC for individual or small group full-service commercial health insurance".  (*Id.* ¶ 21.)  That is something ASO subscribers like the Plaintiffs do not do, and that is enough to disprove Plaintiffs' argument.  Further, the injunctive relief class pleaded in *Cerven* included only those "insured by" defendant "health insurance" plans.  (*Id.* ¶ 20.)  By Plaintiffs' own allegations, Plaintiffs are not "insured" by any Defendant.  Plaintiffs have "self-insured group plans" in which Plaintiffs or their affiliates are the only source of any health "insurance".  (Compl. ¶ 1 n.2.)  And the *Cerven* complaint alleged that ASO products were ***not*** encompassed by the relevant product market of insured products.  (*Cerven* Dkt. 1 ¶¶ 129, 131.)  So too here:  Plaintiffs allege that ASO products differ in important ways from fully-insured products.  (*See* Compl. ¶ 269.)

This Court has rejected Plaintiffs' argument before.  In approving the Subscriber Settlement, the Court considered and overruled the argument that ASO objectors "should get the benefit of the 2012 filing date in *Cerven*".  (MDL Dkt. 2931 at 60.)  The Court determined that "ASOs are excluded from both the proposed damages and the injunction classes".  (*Id.* at 61.)  "Those who are Self-Funded are just that—self-funded.  That is, they did not buy insurance from the Blues."[7]  (*Id.*)  Now, these Plaintiffs—who previously objected to the Subscriber

---

[7] The Amicus Curiae brief filed by certain insurance commissioners in the appeal from the Final Approval Order (*In re Blue Cross Blue Shield Antitrust Litig.*, No. 22-13051 (11th Cir.), Dkt. 129) does not change this.  Plaintiffs do not argue that they were members of any *Cerven* putative class because they purchased stop-loss insurance, and for good reason:  the *Cerven* complaint did not make any allegations whatsoever concerning stop-loss insurance.

Settlement—are renewing a direct attack on a core premise of the ASO allocation in the

Subscriber Settlement that, if successful, could provide ammunition for ASO appellants seeking

to undo the Court's Final Approval Order. (*See In re Blue Cross Blue Shield Antitrust Litig.*,

No. 22-13051 (11th Cir.), Dkt. 121 at 48-55.) This Court has already spoken on this issue: "The

*Cerven* complaint plainly did not contemplate ASOs being part of that case or the relevant class."

(MDL Dkt. 2931 at 61.) Thus, Plaintiffs' claims were not tolled as of February 7, 2012.

ii.   Plaintiffs did not become members of any putative class in the MDL on
some unknown date between 2014 and 2019.

Plaintiffs next argue that some (largely undefined) developments after *Cerven*

tolled their claims. Those points fare no better. *First*, Plaintiffs suggest that one or more of the

four Subscriber Track MDL consolidated amended class action complaints filed between 2013

and 2017 gave Defendants "notice" of Plaintiffs' claims. (*AA* Opp. at 9-10.) Again, that is not

the standard. By Plaintiffs' own admission, the putative classes in each of these complaints were

"identical" to *Cerven* (*id.*), and they included no claims on behalf of ASO subscribers. As in

*Cerven*, they mention ASOs only in explaining why ASO products are *different* from fully-

insured products. (*See* MDL Dkt. 85 ¶¶ 3, 262-279, 389, 394; MDL Dkt. 244 ¶¶ 2, 277-294,

404, 409; MDL Dkt. 897 ¶¶ 2, 306-335, 445, 450; MDL Dkt. 1082 ¶¶ 2, 314-343, 548, 553.) As

in *Cerven*, none of these complaints tolled Plaintiffs' claims.

*Second*, Plaintiffs speculate that their claims may have been tolled based on the

purported "history" of the MDL proceedings. (*AA* Opp. at 8-20.) Plaintiffs spend more than a

dozen pages discussing (and often mischaracterizing) the "history of the MDL", but none of this

has anything to do with the date upon which Plaintiffs' claims were tolled under *American Pipe*.

Because they cannot point to a single MDL Subscriber complaint prior to November 2, 2020,

that includes ASOs in a putative class, Plaintiffs instead cite cherry-picked statements from

briefs throughout the course of the MDL and try to argue that these statements demonstrate that Defendants were on notice of their claims. (*See id.*) Yet again, this wrongly assumes tolling begins when Defendants had some supposed actual notice of Plaintiffs' claims, and none of these isolated statements has any bearing on whether Plaintiffs were members of a putative class pleaded in a prior class-action complaint.[8]  *See Carden*, 2017 WL 4180858, at *13.

For example, in Plaintiffs' untimely "supplement" to its opposition brief (*Alaska Air* Dkt. 239), Plaintiffs cite an argument by Defendants in a 2013 motion to dismiss that the injunctive relief class was broader than the Subscribers' alleged market definition.[9]  Plaintiffs omitted the Subscribers' response—that their complaint "justif[ied] exclusion of administrative services only (ASO) products from the individual and small group fully insured product market because, among other things, ASO policy holders are large enough to self-insure". (MDL Dkt. 153 at 28; *see also* MDL Dkt. 2864 at 14:7-15:7.) And Plaintiffs omitted the fact that the Court denied Defendants' motion to dismiss. (MDL Dkt. 215.) Similarly, Plaintiffs argue that Subscribers "sought certification of a class specifically excluding 'subscribers to Administrative Services Only or Administrative Service Contracts'", which "marked a change from the . . . operative class action complaint". (*AA* Opp. at 14.) But the later class definition cannot change what the earlier class action complaints actually said; in any event, the later express exclusion of ASO accounts simply clarified the existing bounds identified in the class action complaints.

---

[8] Further, Plaintiffs seek tolling for damages claims (under Clayton Act § 4) but rely on the injunctive relief class (with claims only under Clayton Act § 16). The MDL complaints excluded ASOs from all damages classes, and Plaintiffs cannot argue for damages tolling based on injunction-only allegations. *See Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282-83 (11th Cir. 2003) (no tolling for "wrongful death" claim not "explicitly included" in class action, over plaintiff argument about an "ambiguous class definition"); *Health All. Plan of Mich. v. BCBS Mich. Mut. Ins. Co.*, 2017 WL 1209099, at *3 (E.D. Mich. Mar. 31, 2017) (no tolling for Sherman Act "lost profit" claim, when class action had Sherman Act "overcharge claim").

[9] Plaintiffs also argue in their "supplement" that "health insurance" must include "the services provided to self-insured plans" because Defendants stated that they "provide insurance coverage to 100 million" Americans and that number "can only be reached if all self-insured covered lives are included". (*Alaska Air* Dkt. 239 at 2.) However, this statement merely describes the overall Blue System; it does not purport to define any class.

(*E.g.*, MDL Dkt. 2865 at 134:11-135:7.)  Plaintiffs appear to cite these statements to manufacture

a fact issue, but the "facts" they highlight are irrelevant to tolling.  The only fact that matters is

the date when ASO plaintiffs were included in a putative class, and that is plainly November 2,

2020 from the face of the MDL complaints.[10]

   *Third*, Plaintiffs argue that November 2, 2020, is the wrong tolling date because,

17 days earlier, counsel for Defendants and counsel for an ASO subscriber class signed a

settlement agreement dated October 16, 2020, and Plaintiffs are members of that settlement's

Rule 23(b)(2) injunctive relief class.  (*AA* Opp. at 7-8, 18.)  A settlement class can be, and in this

case was, broader than the then-existing litigation class.  *Matsushita Elec. Indus. Co. v. Epstein*,

516 U.S. 367, 376-77 (1996); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107,

107 n.13 (2d Cir. 2005) (collecting cases); *In re Currency Conversion Fee Antitrust Litig.*, 2006

WL 3247396, at *3-4 (S.D.N.Y. Nov. 8, 2006).  Indeed, the purpose of the Fourth Amended

Complaint was to "conform the pleadings to the settlement agreement" (MDL Dkt. 2609 at 1, 3)

and to assert—for the very first time under the representation of brand new ASO counsel—the

ASO claims that would be settled but that had not yet been made in the MDL.[11]

   iii. <u>Plaintiffs became members of a putative class in the MDL only upon the
filing of the Fourth Amended Complaint on November 2, 2020.</u>

   The only "plausible date" on which tolling began is November 2, 2020, the first

and only date that ASO plaintiffs were included in a putative class upon the filing of the Fourth

Amended Complaint.  (MDL Dkt. 2616 at 1.)  Tellingly, different counsel representing different

---

[10] Contrary to Plaintiffs' argument, which is about taking judicial notice of other courts' ***factual findings*** (*AA* Opp. at 7 n.5.), it is proper to take judicial notice of the *Cerven* and MDL pleadings.  *E.I. du Pont de Nemours & Co. v. Cullen*, 791 F.2d 5, 7 (1st Cir. 1986); *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983).

[11] Plaintiffs also contend that the Rule 23(b)(2) settlement class "parallels the original *Cerven* Nationwide Class" and so, because they are members of the Rule 23(b)(2) class, they must also have been members of the *Cerven* class.  (*AA* Opp. at 18.)  Not so.  The Rule 23(b)(2) Injunctive Relief Class is expressly defined to include "Self-Funded Accounts".  (MDL Dkt. 2610-2 ¶ pp.)  Unlike the *Cerven* injunction class, it is not limited to persons or entities *insured* by a *health insurance plan*.  (*Cerven* Dkt. 1 ¶ 20.)

named plaintiffs filed that complaint.  (*AA* Opp. at 16 (noting retention of Warren Burns); MDL

Dkt. 2609 at 1, 3.)  If they had been in the case since the beginning, as Plaintiffs allege, neither

would have been necessary.  Because tolling did not begin before November 2, 2020, all claims

for damages based on transactions prior to November 2, 2016 should be dismissed.

## III.    THE OTHER MATERIALS PLAINTIFFS CITE ARE IRRELEVANT.

Unable to point to a complaint that included them as putative class members prior

to November 2020, Plaintiffs cite a litany of irrelevant materials:  (1) a pleading in another

action, which Plaintiffs mischaracterize;[12] (2) Plaintiffs' own requests for admission, which have

not yet been properly served;[13] and (3) a series of public statements made by certain Defendants

in other contexts.  (*AA* Opp. at 20-24.)  These materials say nothing about whether or when

Plaintiffs were members of any class.

## CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint with

prejudice to the extent Plaintiffs plead claims for alleged injuries before November 2, 2016.

---

[12] Plaintiffs argue that HCSC identified Plaintiffs as Subscribers who "filed a consolidated amended complaint against the" Blues in July 2013.  (*AA* Opp. at 21.)  However, this argument is based on an inaccurate description of HCSC's statement.  HCSC stated that "[s]everal Subscribers, who opted out of the Subscriber Settlement have filed their own actions against the Blue Plans, including HCSC, and Association, which remain pending."  *Homeland Ins. Co. of N.Y. v. HCSC*, No. 1:18-cv-06306 (N.D. Ill. Oct. 11, 2022), Dkt. 307 at 80.  HCSC did *not* identify Plaintiffs to this action as the Subscribers referenced here, nor are they the only Subscribers HCSC could possibly be referring to; Plaintiffs ignore that there is an action brought by individual subscribers who opted out of the Subscriber Settlement that is also pending.  *Hoover v. Blue Cross Blue Shield Ass'n*, No. 2:22-cv-00261-RDP (N.D. Ala.).

[13] Plaintiffs wrongly assert that Defendants have made certain admissions by failing to respond to Plaintiffs' requests for admission.  (*AA* Opp. at 21-22.)  Plaintiffs sent their set of 237 requests for admission on September 27, 2022, prior to the parties' December 19, 2022 Federal Rule of Civil Procedure 26(f) conference.  Plaintiffs' requests for admission were untimely.  Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f).").  Thus, not only have they not been admitted, they have not been properly served.  Plaintiffs are wrong that the Rule 26(d) discovery moratorium does not apply to requests for admission.  (*AA* Opp. at 21 n.17.)  The 1993 amendment to Rule 36 governing requests for admission added: "Without leave of court or written stipulation, requests for admission may not be served before the time specified in Rule 26(d)."  That sentence was removed from Rule 36 in 2007, and the Committee Notes on the 2007 amendment state:  "The final sentence of the first paragraph of former Rule 36(a) was a redundant cross-reference to the discovery moratorium provisions of Rule 26(d).  Rule 26(d) is now familiar, obviating any need to carry forward the redundant cross-reference."  Requests for admission are thus clearly subject to the Rule 26(d) discovery moratorium. *See, e.g.*, *Miller v. Montgomery Cnty Bd. of Ed.*, 2022 WL 1590473, at *4 (M.D. Ala. Jan. 10, 2022).

Dated:  December 23, 2022

Respectfully submitted,

*/s/ Karin A. DeMasi*
Evan R. Chesler
Karin A. DeMasi
Lauren R. Kennedy
Helam Gebremariam
David H. Korn
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019
Tel: (212) 474-1000
Fax: (212) 474-3700
echesler@cravath.com
kdemasi@cravath.com
lkennedy@cravath.com
hgebremariam@cravath.com
dkorn@cravath.com

*Coordinating Counsel for Defendant Blue Cross and Blue Shield Association; Counsel for Defendants Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Arizona, Inc.; GuideWell Mutual Holding Corporation; Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina; BlueCross BlueShield of Tennessee, Inc.; California Physicians' Service d/b/a Blue Shield of California; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.; Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for*

*Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa)*

Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Peter Bisio
Elizabeth Jose
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC  20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
peter.bisio@hoganlovells.com
elizabeth.jose@hoganlovells.com

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc., and all of its named subsidiaries in this consolidated action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon*

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY &
SCARBOROUGH LLP

Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF &
BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL  35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Arizona, Inc.; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark BCBSD Inc.; California Physicians' Service d/b/a Blue Shield of California; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield*

1320 Main Street, 17th Floor
Columbia, SC  29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc.,
and all of its named subsidiaries in this
consolidated action; Blue Cross and Blue Shield of
North Carolina; Louisiana Health Service &
Indemnity Company (Blue Cross and Blue Shield
of Louisiana); BCBSM, Inc. (Blue Cross and Blue
Shield of Minnesota); Blue Cross and Blue Shield
of South Carolina; Horizon Healthcare Services,
Inc. (Horizon Blue Cross and Blue Shield of New
Jersey); Blue Cross & Blue Shield of Rhode
Island; Blue Cross and Blue Shield of Vermont;
Cambia Health Solutions, Inc.; Regence Blue
Shield of Idaho; Regence Blue Cross Blue Shield
of Utah; Regence Blue Shield (of Washington);
Regence Blue Cross Blue Shield of Oregon; Blue
Cross & Blue Shield of Mississippi, a Mutual
Insurance Company; Wellmark of South Dakota,
Inc. (Wellmark Blue Cross and Blue Shield of
South Dakota); Wellmark, Inc. (Wellmark Blue
Cross and Blue Shield of Iowa); Hawaii Medical
Service Association (Blue Cross and Blue Shield of
Hawaii); Triple-S Salud, Inc; Defendants Blue
Cross and Blue Shield of Florida, Inc.; Blue Cross
and Blue Shield of Massachusetts, Inc.; BlueCross
BlueShield of Tennessee, Inc.*

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc.,
and all of its named subsidiaries in this
consolidated action; Blue Cross and Blue Shield of
North Carolina; Louisiana Health Service &*

*of Hawaii)*

Carl S. Burkhalter
John Thomas A. Malatesta, III
MAYNARD COOPER & GALE PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL  35203
Tel: (205) 254-1000
Fax: (205) 254-1999
cburkhalter@maynardcooper.com
jmalatesta@maynardcooper.com

Pamela B. Slate
HILL CARTER FRANCO COLE &
BLACK, P.C.
425 South Perry Street
Montgomery, AL  36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*With Cravath, Swaine & Moore LLP,
counsel for Defendant Blue Cross Blue
Shield of Alabama*

Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Tel: (312) 862-2000
Fax: (312) 862-2200
jzeiger@kirkland.com

*Counsel for Defendants Health Care
Service Corporation, an Illinois Mutual
Legal Reserve Company, including its
divisions Blue Cross and Blue Shield of
Illinois, Blue Cross and Blue Shield of
Texas, Blue Cross and Blue Shield of
New Mexico, Blue Cross and Blue
Shield of Oklahoma, and Blue Cross and
Blue Shield of Montana; Caring for
Montanans, Inc., f/k/a Blue Cross and
Blue Shield of Montana, Inc.; Highmark*

*Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
Tel: (206) 626-7714
Fax: (206) 299-0414
gpayton@kilpatricktownsend.com

*Counsel for Defendants Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska*

Brian K. Norman
SHAMOUN & NORMAN, LLP
1800 Valley View Lane, Suite 200
Farmers Branch, TX  75234
Tel: (214) 987-1745
Fax: (214) 521-9033
bkn@snlegal.com

H. James Koch
ARMBRECHT JACKSON LLP
RSA Tower, 27th Floor
11 North Water Street
Mobile, AL  36602
Tel: (251) 405-1300
Fax: (251) 432-6843
hjk@ajlaw.com

*Counsel for Defendants CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.*

M. Patrick McDowell (No. 5551-U421)

*Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark BCBSD Inc.; Highmark Western and Northeastern New York Inc.*

Jonathan M. Redgrave
REDGRAVE, LLP
14555 Avion Parkway, Suite 275
Chantilly, VA  20151
Tel: (703) 592-1155
Fax: (612) 332-8915
jredgrave@redgravellp.com

*Additional Counsel for HCSC and Highmark Defendants*

Todd M. Stenerson
Brian C. Hauser
SHEARMAN & STERLING LLP
401 9th Street, N.W., Suite 800
Washington, DC  20004
Tel: (202) 508-8000
Fax: (202) 508-8100
todd.stenerson@shearman.com
brian.hauser@shearman.com

Rachel Mossman Zieminski
SHEARMAN & STERLING LLP
2601 Olive Street, Suite 1700
Dallas, TX 75201
Tel: (214) 271-5777
Fax: (214) 271-5778
rachel.zieminski@shearman.com

Sarah L. Cylkowski
Thomas J. Rheaume, Jr.
BODMAN PLC
1901 Saint Antoine Street
6th Floor at Ford Field
Detroit, MI  48226
Tel: (313) 259-7777
Fax: (734) 930-2494
scylkowski@bodmanlaw.com
trheaume@bodmanlaw.com

BRUNINI, GRANTHAM, GROWER
& HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100
Jackson, MS  39201
Tel: (601) 948-3101
Fax: (601) 960-6902
pmcdowell@brunini.com

Cheri D. Green
BLUE CROSS & BLUE SHIELD OF
MISSISSIPPI, A MUTUAL INSURANCE
COMPANY
P.O. Box 1043
Jackson, MS  39215
Tel: (601) 932-3704
cdgreen@bcbsms.com

*Counsel for Defendant Blue Cross & Blue Shield
of Mississippi, a Mutual Insurance Company*

Michael A. Naranjo
FOLEY & LARDNER LLP
555 California Street, Suite 1700
San Francisco, CA  94104
Tel: (415) 984-9847
Fax: (415) 434-4507
mnaranjo@foley.com

Alan D. Rutenberg
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, DC  20007
Tel: (202) 672-5300
Fax: (202) 672-5399
arutenberg@foley.com

*Counsel for Defendant USAble Mutual Insurance
Company, d/b/a Arkansas Blue Cross and
Blue Shield*

Robert K. Spotswood
Michael T. Sansbury
Joshua K. Payne
Jess R. Nix
Morgan B. Franz

Andy P. Campbell
A. Todd Campbell
Yawanna N. McDonald
CAMPBELL PARTNERS LLC
505 North 20th Street, Suite 1600
Birmingham, AL  35203
Tel: (205) 224-0750
Fax: (205) 224-8622
andy@campbellpartnerslaw.com
todd@campbellpartnerslaw.com
yawanna@campbellpartnerslaw.com

*Counsel for Defendant Blue Cross and
Blue Shield of Michigan*

John Briggs
Rachel Adcox
Jeny M. Maier
AXINN, VELTROP & HARKRIDER,
LLP
1901 L Street, N.W.
Washington, DC  20036
Tel: (202) 912-4700
Fax: (202) 912-4701
jbriggs@axinn.com
radcox@axinn.com
jmaier@axinn.com

Stephen A. Rowe
Aaron G. McLeod
ADAMS AND REESE LLP
Regions Harbert Plaza
1901 6th Avenue North, Suite 3000
Birmingham, AL  35203
Tel: (205) 250-5000
Fax: (205) 250-5034
steve.rowe@arlaw.com
aaron.mcleod@arlaw.com

*Counsel for Defendants Independence
Hospital Indemnity Plan, Inc. f/k/a
Independence Blue Cross; Independence
Health Group, Inc.*

Kathleen Taylor Sooy

SPOTSWOOD SANSOM & SANSBURY LLC
Financial Center
505 20th Street North, Suite 700
Birmingham, AL 35203
Tel: (205) 986-3620
Fax: (205) 986-3639
rks@spotswoodllc.com
msansbury@spotswoodllc.com
jpayne@spotswoodllc.com
jnix@spotswoodllc.com
mfranz@spotswoodllc.com

*Counsel for Defendant Capital BlueCross*


Robert R. Riley, Jr.
RILEY & JACKSON, P.C.
3530 Independence Drive
Birmingham, AL 35209
Tel: (205) 879-5000
Fax: (205) 879-5901
rob@rileyjacksonlaw.com

*Counsel for Defendants Blue Cross and Blue
Shield of Florida, Inc.; Blue Cross and Blue Shield
of Massachusetts, Inc.; BlueCross BlueShield
of Tennessee, Inc.*


Edward S. Bloomberg
John G. Schmidt Jr.
Anna Mercado Clark
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY 14203
Tel: (716) 847-8400
Fax: (716) 852-6100
ebloomberg@phillipslytle.com
jschmidt@phillipslytle.com
aclark@phillipslytle.com

*Counsel for Defendants Excellus Health Plan,
Inc., d/b/a Excellus BlueCross BlueShield and
Lifetime Healthcare, Inc.*

Tracy A. Roman
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116
ksooy@crowell.com
troman@crowell.com

Sarah Gilbert
Honor Costello
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Tel: (212) 223-4000
Fax: (212) 223-4134
sgilbert@crowell.com
hcostello@crowell.com

John M. Johnson
Brian P. Kappel
LIGHTFOOT FRANKLIN & WHITE
LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
Tel: (205) 581-0700
Fax: (205) 581-0799
jjohnson@lightfootlaw.com
bkappel@lightfootlaw.com

*Counsel for Defendants Blue Cross of
Idaho Health Service, Inc.; Blue Cross
and Blue Shield of Kansas, Inc.; Blue
Cross and Blue Shield of Kansas City;
Blue Cross and Blue Shield of
Nebraska; Blue Cross Blue Shield of
North Dakota; Blue Cross Blue Shield
of Wyoming; GoodLife Partners, Inc.;
and HealthyDakota Mutual Holdings*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on December 23, 2022, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Karin A. DeMasi*
Karin A. DeMasi
