Case 2:21-cv-01209-RDP   Document 268   Filed 02/21/23   Page 1 of 13                FILED
                                                                                         2023 Feb-21  PM 03:27
                                                                                         U.S. DISTRICT COURT
                                                                                             N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ALASKA AIR GROUP, INC., et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | Case No.: 2:21-CV-1209-RDP |
| } | |
| **ANTHEM INC., et al.,** } | |
| } | |
| **Defendants.** } | |

| | |
|---|---|
| **JETBLUE AIRWAYS CORPORATION, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | Case No.: 2:22-CV-558-RDP |
| } | |
| **ANTHEM INC., et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendants' Motions to Dismiss Certain Claims from Plaintiffs' Amended Complaints. (*Alaska Air* Case No.: 2:21-CV-1209-RDP, Doc. # 134; *JetBlue* Case No.: 2:22-CV-558-RDP, Doc. # 97). In the Motions, Defendants seek to dismiss the pertinent Complaints (*Alaska Air* Doc. # 86; *JetBlue* Doc. # 16) pursuant to Rule 12(b)(6) to the extent that the Complaints assert claims for damages based on alleged injuries that occurred prior to November 2, 2016. (*Alaska Air* Doc. # 134; *JetBlue* Doc. # 97).

A plaintiff must file an antitrust claim within four years following a defendant's injurious act. 15 U.S.C. § 15b. The Complaints at issue were filed on behalf of large group employers, sponsors, administrators and/or health benefits plans that provide health coverage through the Blue

System, but who are "self-funded" accounts – *i.e.*, they self-insure and contract with Blue Plans for administrative services only (*e.g.*, claims processing) ("ASO"). (*Alaska Air* Doc. # 86 at 14-15, 19, n.2; *JetBlue* Doc. # 16 at 9, 14, n.2). In their Motions, Defendants ask this court to hold that these ASOs were only included as part of the Subscriber Class in *In Re Blue Cross Blue Shield Antitrust Litigation MDL 2406* as of November 2, 2020 (the date on which the Fourth Amended Class Complaint in the MDL was filed), which asserted claims on behalf of self-funded accounts. (Case No. 2:13-cv-20000-RDP, Doc. # 2616). Notably, Defendants' proposed date of inclusion for the ASOs falls after October 16, 2020, the date the Subscriber Settlement Agreement (which included a Self-Funded (ASO) Sub-Class) was executed by Subscriber Class Counsel, Self-Funded Sub-Class Settlement Counsel, and the Blues. (Case No. 2:13-cv-20000-RDP, Doc. # 2610-2).[1]

Plaintiffs filed a Consolidated Response to these virtually identical Motions. (*Alaska Air* Doc. # 232; *JetBlue* Doc. # 164). Defendants thereafter filed a consolidated Reply. (*Alaska Air* Doc. # 247; *JetBlue* Doc. # 171). For the reasons discussed below, the Motions are due to be denied.

**I.      Background**

The *Alaska Air* and *JetBlue* cases were filed on behalf of ASOs who opted out of the Subscriber Settlement in the *In Re Blue Cross Blue Shield Antitrust Litigation MDL 2406*, Case No. 2:13-cv-20000-RDP. (*See Alaska Air* Doc. # 232-1 (listing all Plaintiffs in the *Alaska Air* and *JetBlue* cases)).

---

[1] Defendants' Motion, as it relates to the *Alaska Air* Amended Complaint, also seeks to dismiss portions of that Complaint to the extent it asserts claims on behalf of Alaska Air Group, Inc., which they argue lacks standing. (*Alaska Air* Doc. # 134). In the case of the *JetBlue* Amended Complaint, Defendants' Motion seeks to dismiss portions of that Complaint to the extent it asserts claims on behalf of the Kraft Heinz entities. (*JetBlue* Doc. # 97). For the reasons set forth in footnote 18 of Plaintiffs' Consolidated Response (*Alaska Air* Doc. # 232 at 30, n.18), to which Defendants have not responded, these aspects of Defendants' Motions are due to be denied.

The first of the MDL's Subscriber cases to be filed was *Cerven, et al. v. BCBSNC*, which was filed in 2012, before the various cases in MDL 2406 were centralized before this court by the Judicial Panel on Multidistrict Litigation. (Case No. 2:12-cv-04169, Doc. # 1). The *Cerven* Complaint, filed in the Western District of North Carolina, defined the "Nationwide Injunction Class" as: "All persons or entities in the United States of America who are currently insured by any health insurance plan that is currently a party to a license agreement with BCBSA that restricts the ability of that health insurance plan to do business outside of any geographically defined area. (Case No. 2:12-cv-04169, Doc. # 1 ¶ 20). The *Cerven* Complaint alleged the following regarding "Fully-insured health insurance versus ASO products":

> When a consumer purchases a fully-insured health insurance product, the entity from which the consumer purchases that product provides a number of services: it pays its enrollees' medical costs, bears the risk that its enrollees' health care claims will exceed its anticipated losses, controls benefit structure and coverage decisions, and provides "administrative services" to its enrollees, e.g., processes medical bills and negotiates discounted prices with providers. In contrast, when a consumer purchases an administrative services only ("ASO") product, sometimes known as "no risk," the entity from which the consumer purchases that product provides administrative services only. Therefore, fully-insured health insurance products and ASO products are only substitutes for those consumers able to self-insure, i.e., able to pay their own medical costs and bear the risk that claims will exceed their anticipated losses.

(*Id*. at ¶ 129).

The first Subscriber Track Consolidated Class Action Complaint in the MDL, which was filed on July 1, 2013, asserted an injunctive relief class identical to that in *Cerven*. (*Compare* Case No 2:13-cv-20000-RDP, Doc. # 85 at ¶ 262). The Nationwide Injunctive Relief class in MDL 2406's First Consolidated Class Action Complaint was defined as: "All persons or entities in the United States of America who are currently insured by any health insurance plan that is currently a party to a license agreement with BCBSA that restricts the ability of that health insurance plan to do business in [or outside of] any geographically defined area." (*Id*.). Three subsequent amended

3

Subscriber Track Class Action Complaints in the MDL contained the same alleged injunctive relief class. (Case No 2:13-cv-20000-RDP, Docs. # 244, ¶ 277; # 843, ¶ 306; # 1082, ¶¶ 314, 315).

On April 15, 2019, Subscribers filed their Motion for Certification of Nationwide Injunctive Class or, in the Alternative, Alabama Injunctive Class in the MDL. (Case No 2:13-cv-20000-RDP, Doc. # 2407). The proposed Nationwide Injunction Class was defined as follows:

> All persons or entities in the United States of America and Puerto Rico who are currently subscribers to any health insurance plan that is offered by any Defendant or any subsidiary, affiliate, or successor-in-interest thereof whose ability to do business in any geographically defined area is limited by a license agreement with BCBSA. *Excluded from the Class are subscribers to Administrative Services Only or Administrative Service Contracts*, the Defendants themselves and any parent, subsidiary or affiliate of any Defendant.

(Case No 2:13-cv-20000-RDP, Doc. # 2407 at 1) (emphasis added).

On April 19, 2019, in preparation for a May 23, 2019 Status Conference, the court ordered the parties to be prepared "to discuss how ASOs might fit into or relate to this MDL." (Case No 2:13-cv-20000-RDP, Doc. # 2418). The April 19, 2019 Order further required the parties to "submit a joint report including a list of (1) all ASOs and (2) who may represent the ASOs in any discussions about resolution or other litigation matters." (*Id*.). "In July 2019, as mediation was ongoing, [Subscriber Class Counsel] approached Warren Burns of Burns Charest LLP to inquire whether he would be willing to serve as counsel for a sub-class of Self-Funded Accounts and their employees []." (Case No 2:13-cv-20000-RDP, Doc. # 2610-6 at ¶ 31). "Burns agreed, and was retained by Hibbett Sports, Inc., an Alabama-based, publicly-traded retailer of sporting goods that is a Self-Funded Account." (*Id*.).

In September 2019, after reviewing discovery produced in the MDL, Burns, as Self-Funded Sub-Class Settlement Counsel, began attending MDL mediation sessions. (*Id*. at ¶ 32). Burns had a substantial head start based upon the information provided to him. In November 2019, Subscriber

4

Class Counsel, Self-Funded Sub-Class Settlement Counsel, and the Blues agreed on a settlement term sheet. (*Id*.). Also in November 2019, Kenneth Feinberg was retained as an Allocation Mediator to facilitate the determination of an appropriate allocation of the $2.67 Billion Net Settlement Fund between fully insured Class Members and the Self-Funded Sub-Class. (*Id*. at ¶ 33).

On October 16, 2020, the Subscriber Class Representatives, the Self-Funded Sub-Class Representative, and Settling Defendants executed the Subscriber Class Action Settlement Agreement. (Case No 2:13-cv-20000-RDP, Doc. # 2610-2). The "Injunctive Relief Class" is defined in the October 16, 2020 Settlement Agreement as: "all Individual Members, Insured Groups, Self-Funded Accounts, and Members that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product sold, underwritten, insured, administered, or issued by any Settling Individual Blue Plan during the Settlement Class Period." (Case No 2:13-cv-20000-RDP, Doc. # 2610-2 at ¶ A(1)(pp)).

On November 2, 2020, seventeen (17) days after the execution of the Subscriber Class Action Settlement Agreement, Subscribers filed a Fourth Amended Class Action Complaint ("FACAC"). (Case No 2:13-cv-20000-RDP, Doc. # 2626). The FACAC states that the action was brought on behalf of subscribers of, enrollees in, or self-funded accounts of the Individual Blue Plans. (*Id*. at ¶ 2). The November 2, 2020 FACAC included Hibbett Sports, Inc., which "maintains a self-funded health insurance plan and contracted with BCBS-AL for ASO services," as a Plaintiff for the first time. (*Id*. at ¶ 79).

In its August 9, 2022 Final Order and Judgment Granting Approval of Subscriber Class Action Settlement, this court considered an objection to the Subscriber Settlement that argued that

the Self-Funded class period as it relates to damages should go back to 2008. (Case No. 2:13-cv-20000-RDP, Doc. # 2931 at 59-60). In overruling that Objection, the court stated:

> The Bradley Objectors also question whether the ASO Class Period should go back further in time. They argue they should get the benefit of the 2012 filing date in *Cerven, et al. v. BCBS-NC*, No. 2:12-cv-04169, as the starting point of their class period. (*See* Docs. # 2812-19 at 91-96; 2845 at 3-10). As an initial matter, it is worth noting that Self-Funded Accounts only became involved in this MDL in July 2019 (Doc. # 2610 ¶ 31), yet their claims get the benefit of a class period going back to September 2015.[]
>
> But in any event, and even more fundamentally, the Bradley Objectors misconstrue the *Cerven* complaint. The proposed damages class in the *Cerven* complaint was:
>
>> All persons or entities who, from February 7, 2008 to the present (the "Class Period") have paid *health insurance premiums* to BCBS-NC *for individual or small group full-service commercial health insurance*.
>
> (*Cerven* Doc. # 1 ¶ 21 (emphasis added)). The *Cerven* complaint mentions ASOs but only in the context of distinguishing them from the proposed class and explaining that "fully-insured health insurance products and ASO products are only substitutes for those consumers able to self-insure[.]" (*Id.* ¶ 129). Accordingly, as the *Cerven* complaint makes clear, "it is appropriate to consider the individual and small group health insurance product market as distinct from the large group health insurance product market" because of, among other things, "the prevalence of ASOs in each market." (*Id.* ¶ 131).
>
> The *Cerven* complaint plainly did not contemplate ASOs being part of that case or the relevant class.[] "[T]he critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted." *Davenport v. United States*, 217 F.3d 1341, 1345 n.8 (11th Cir. 2000). The *Cerven* complaint simply gave no notice to Defendants whatsoever that they would have to defend against alleged misconduct in the ASO market. So, ASOs cannot get the benefit of the *Cerven* filing date. *See Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1131 (11th Cir. 2004).
>
> The Bradley Objectors argue there is a further asymmetry in the allocation. They question how the settlement proponents can allow relation-back of damages claims for large insured groups, but not ASOs, despite the *Cerven* proposed damages class being limited to individual or small group insurance. Of course, the answer lies in *Cerven*'s proposed injunction class:
>
>> All persons or entities in the United States of America who are currently *insured by any health insurance plan* that is currently a party to a license agreement with BCBSA that restricts the ability of that health insurance plan to do business outside of any geographically defined area.

6

>  (*Cerven* Doc. # 1 ¶ 20 (emphasis added)). The *Cerven* injunction class includes all entities, regardless of their size, who are "insured by any health insurance plan." (*Id.*). Those who are Self-Funded are just that—self-funded. That is, they did not buy insurance from the Blues. Therefore, under a fair reading of the *Cerven* Complaint, ASOs are excluded from both the proposed damages and the injunction classes.
>
>  For all of these reasons, the objection that the Self-Funded Class period should go back to 2008 is **OVERRULED**.

(Case No. 2:13-cv-20000-RDP, Doc. # 2931 at 59-61).

**II.     Standard of Review**

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the "complaint must demonstrate 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

7

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

**III.   Analysis**

Defendants' Motions seek to dismiss certain of Plaintiffs' damage claims based on the relevant statute of limitations. Defendants bear the burden of establishing the applicability of a statute of limitations affirmative defense. *See Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990). A plaintiff is not required to negate a statute of limitations defense in his complaint. *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). A dismissal on statute of limitations grounds "is appropriate if it is apparent from the face of the complaint that the claim is time-barred." *Owens-Benniefield v. BSI Fin. Servs.*, 806 Fed. Appx. 853, 856 (11th Cir. 2020) (citing *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013)).

"The commencement of the statute of limitations is a question of fact." *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 828 (11th Cir. 1999), *amended in part*, 211 F.3d 1224

(11th Cir. 2000) (citing *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1169-70 (5th Cir. 1979)).[2] Here, the court's analysis of the statute of limitations issue is complicated by the fact the Opt Out Plaintiffs' claims were tolled for some period of time by the Subscriber class action cases in *In Re Blue Cross Blue Shield Antitrust Litigation MDL 2406.* In any event, however, if there is a genuine question as to when the statute of limitations began to run, at this stage the Motions must be denied. *See Morton's Mkt., Inc.*, 198 F.3d at 828.

"Under the antitrust laws, 'a cause of action accrues and the statute [of limitations] begins to run when a defendant commits an act that injures the plaintiffs' business.'" *Morton's Mkt., Inc.* 198 F.3d at 827 (quoting *Zenith Radio Corp. v. Hazeltine Research. Inc.*, 401 U.S. 321, 338 (1971)). "A plaintiff must file its antitrust claim within four years following a defendant's injurious act." *Id.* (citing 15 U.S.C. § 15b).

In their Motions, Defendants argue that any claims for damages for the period before November 2, 2016 (four years before November 2, 2020) are time barred because ASO claims were first included in a complaint in the MDL on November 2, 2020. (*Alaska Air* Doc. # 143 at 7-8). Plaintiffs contend that their damages claims dating back before November 2, 2016 are preserved under the *American Pipe* class action tolling doctrine. (*Alaska Air* Doc. # 232 at 10-11). Defendants agree that the *American Pipe* class action tolling doctrine applies, but argue that "only [the claims] of plaintiffs included in the complaint's alleged class(es)" are tolled. (*Alaska Air* Doc. # 247 at 7).

The *American Pipe* class action tolling doctrine provides that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Am. Pipe*

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to October 1, 1981.

*& Const. Co. v. Utah*, 414 U.S. 538, 554 (1974); *see also Crown, Cork & Seal v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). As the Supreme Court explained in *Crown*:

> when a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that "concern the same evidence, memories, and witnesses as the subject matter of the original class suit," so that the defendant will not be prejudiced. [] Claims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations.

*Crown*, 462 U.S. at 355. Thus, the real issue is not the allegations of the complaint, but rather the parameters of what the earlier class action gave Defendants notice about. *See Champion v. Homa*, 2008 WL 900967, at *10 (M.D. Ala. Mar. 31, 2008) (a class action complaint "commences the action for all members of the class as *subsequently determined*" (quoting *American Pipe*, 414 U.S. at 550-51)).

The Supreme Court has noted that *American Pipe* "tolling [is] in accord with 'the functional operation of a statute of limitations'" because "the named plaintiff 'notifie[d] the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.'" *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2051 (2017) (quoting *American Pipe*, 414 U.S. at 554-56). Thus, the Supreme Court appears to suggest that it is not necessarily the complaint filed in a class action that determines for whom the statute of limitations is tolled. To the contrary, so long as a defendant is notified of the substantive claims being brought against them and the number and generic identities of the potential plaintiffs who may participate in the judgment, tolling is appropriate. *California Pub. Employees' Ret. Sys.*, 137 S. Ct. at 2053. "[T]he *American Pipe* Court, in permitting tolling, suggested that generic notice satisfied the purposes of the statute of limitations in that case." *Id.* (citing *American Pipe*, 414 U.S. at 554- 555). And, importantly, "this was deemed sufficient in balancing the equities to allow tolling under the

10

antitrust statute[]." *Id.* (distinguishing the purpose of a statute of repose from the purpose of a statute of limitations).

The court has been unable to find any Eleventh Circuit cases that address this precise issue. However, courts in the D.C. Circuit have taken "a functional approach to application of the [] guideposts of *American Pipe* tolling that emphasizes whether tolling under [the] circumstances would serve the purposes underlying the class-action tolling doctrine." *In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, 2021 WL 1909777, at *7 (D.D.C. May 12, 2021) (internal citations omitted) (quoting *McCarthy v. Kleindienst*, 562 F.2d 1269, 1274 (D.C. Cir. 1977) and *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 527 (D.C. Cir. 2010)). "Under this approach, tolling for putative class members is appropriate so long as 'the defendant has received fair notice' through the former class action 'of the number and generic identity of the potential [plaintiffs] and their substantive claims.'" *In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, 2021 WL 1909777, at *7 (quoting *McCarthy*, 562 F.2d at 1274). "The central inquiry within this framework is whether the claims of former putative class members are predicated on the same acts as the conduct challenged in the original class action, such that there can be no doubt that the defendants have received sufficient notice of the contours of potential claims." *Id*. (quoting *McCarthy*, 562 F.2d at 1275) (internal quotations marks omitted). In *McCarthy,* the court observed that "if the court can conclude that the defendant has received the essential information necessary to determine both the subject matter and size of the prospective litigation, then the doctrine of *American Pipe* may be applied." 562 F.2d at 1275 (quoting *American Pipe*, 414 U.S. at 555)) (internal quotation marks omitted). This court agrees that this functional approach, which requires appropriate notice to Defendants, better serves the purpose of

11

the tolling doctrine than would a more rigid application – particularly under the circumstances of these cases.

Therefore, the court considers this to be the question: When were Defendants notified of the ASOs' substantive claims and the number and generic identities of the ASOs? On April 19, 2019, in the MDL, the court ordered the parties to be prepared "to discuss how ASOs might fit into or relate to this MDL" and "submit a joint report including a list of [] all ASOs []. (Case No. 2:13-cv-20000-RDP, Doc. # 2418). In September 2019, Warren Burns, as Self-Funded Sub-Class Settlement Counsel, began attending MDL mediation sessions. (Case No. 2:13-cv-20000-RDP, Doc. # 2610-6 at ¶ 32). In November 2019, Subscriber Class Counsel, Self-Funded Sub-Class Settlement Counsel, and the Blues agreed on a settlement term sheet. (*Id.*). On October 16, 2020, the Subscriber Class Representatives, the Self-Funded Sub-Class Representative, and Settling Defendants executed the Subscriber Class Action Settlement Agreement which included an "Injunctive Relief Class" including "all Individual Members, Insured Groups, Self-Funded Accounts, and Members that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product sold, underwritten, insured, administered, or issued by any Settling Individual Blue Plan during the Settlement Class Period." (Case No. 2:13-cv-20000-RDP, Doc. # 2610-2 at ¶ A(1)(pp)).

Thus, Defendants negotiated and signed an agreement settling the ASOs' claims before the operative MDL Subscriber Complaint was officially amended to include them. (Case No. 2:13-cv-20000-RDP, Docs. # 2610-2 and # 2616). It would defy logic to conclude that, at least by the time they negotiated a settlement that included the ASOs, Defendants were not on notice of the claims alleged by the ASOs and that Defendants were not also informed of the number and "generic identities" of the ASOs. *See American Pipe*, 414 U.S. at 554-55. At the very least, these facts raise

a genuine issue of material fact as to the time period for which, and for whom, the statute of limitations was tolled by the Subscriber Track MDL under *American Pipe*.

## IV. Conclusion

Because it is not "apparent from the face of the complaint that [claims for damages before November 2, 2016 are] time-barred," "a Rule 12(b)(6) dismissal on statute of limitations grounds" is not appropriate. *La Grasta*, 358 F.3d at 845-46 (internal quotation marks omitted). Moreover, at a minimum, there is a question of fact regarding the dates for which *American Pipe* tolling applies. Therefore, Defendants' Motions to Dismiss Certain Claims from Plaintiffs' Amended Complaints (*Alaska Air* Doc. # 134; *JetBlue* Doc. # 97) are **DENIED**.

**DONE** and **ORDERED** this February 21, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE