# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **Alaska Air Group, Inc.,** *et al.*, <br>      **Plaintiffs,** <br> **v.** <br> **Anthem, Inc.,** *et al.*, <br>      **Defendants.** | **No. 2:21-cv-01209-RDP** |
| **JetBlue Airways Corporation,** *et al.*, <br>      **Plaintiffs,** <br> **v.** <br> **Anthem, Inc.,** *et al.*, <br>      **Defendants.** | **No. 2:22-cv-00558-RDP** |
| **Bed Bath & Beyond Inc.,** *et al.*, <br>      **Plaintiffs,** <br> **v.** <br> **Anthem, Inc.,** *et al.*, <br>      **Defendants.** | **No. 2:22-cv-01256-RDP** |

## AMENDED[1] MEMORANDUM OPINION AND ORDER

These cases are before the court on (1) Plaintiffs' Motion to Compel Pre-2015 Structured

Data or, Alternatively, to Declare the Rule 37 Implications of Defendants' Refusal to Produce the

Data (*Alaska Air*,[2] Doc. # 380), and (2) Defendants' Motion for a Protective Order Based on the

---

[1] Plaintiffs in these cases moved for clarification of this court's March 19, 2024 Order. On April 30, 2024, the court conducted a status conference during which the court addressed, among other things, Plaintiffs' Motion. In light of matters occurring on the record during the status conference, Plaintiffs' Motiond for Clarification are **GRANTED**. The court hereby **AMENDS** its prior Memorandum Opinion and Order as reflected at the bottom of page 14, *infra*.

[2] For ease of reference, when citing documents related to Case No. 2:21-cv-01209-RDP, the court simply refers to "*Alaska Air*." Also, for efficiency, the court will only cite to relevant documents in the *Alaska Air* case where the cited documents were also filed in the *JetBlue* case, Case No. 2:22-cv-00558-RDP, and the *Bed Bath & Beyond* case, Case No. 2:22-cv-01256-RDP.

Appropriate Statute of Limitations For Plaintiffs' Claims (*Alaska Air*, Doc. # 382). Both Motions relate to the parties' dispute over whether Defendants should be required to produce certain pre-2015 structured data that was previously produced in *In Re Blue Cross Blue Shield Antitrust Litigation MDL 2406*, Case No. 2:13-cv-20000-RDP. For the reasons discussed below, the court concludes both Motions are due to be granted in part and denied in part.

## I.    Background

In these cases, in either late 2022 or early 2023, Defendants moved to dismiss Plaintiffs' claims in the various complaints that sought damages based on any alleged injuries that occurred prior to November 2, 2016. (*Alaska Air*, Doc. # 134). The court denied those motions. (*Alaska Air*, Doc. # 268). In considering the motions, the court noted that the relevant question under *American Pipe* tolling principles was "[w]hen were Defendants notified of the ASOs' substantive claims and the number and generic identities of the ASOs?" because the statute of limitations would go back four years from this date. (*Alaska Air*, Doc. # 268 at 12). Defendants had argued that the applicable date was November 2, 2020 (the date on which the Fourth Amended Class Complaint in the MDL was filed). (*Id*. at 2). This court reviewed the record evidence in the case and noted that it would,

> defy logic to conclude that, at least by the time they negotiated a settlement that included the ASOs, Defendants were not on notice of the claims alleged by the ASOs and that Defendants were not also informed of the number and "generic identities" of the ASOs.

(*Id*. at 12). Defendants negotiated and signed the Subscriber Settlement, including ASO claims, *before* the Fourth Amended Complaint was filed. It is as tautological as it is true to say that Defendants did not negotiate such a settlement without notice of the claims alleged by the ASOs as well as both the number and "generic identities" of the ASOs.

After reviewing the record evidence, it was unnecessary for the court to determine the earliest date that Defendants had been notified of the ASOs' substantive claims and the number

and generic identities of the ASOs. (*Id*. at 12-13). Rather, the court held that, "at the very least," there was "a genuine issue of material fact as to the time period for which, and for whom, the statute of limitations was tolled by the Subscriber Track MDL under *American Pipe*." (*Id*.).

But now the statute of limitations issue is intertwined with the current discovery dispute because Defendants assert the requested MDL data is irrelevant as it predates any damages period applicable to Plaintiffs' claims in these cases.

During an October 19, 2023 Status Conference, certain buckets of Defendants' structured data produced in the MDL were discussed: revenue and expense data, data regarding bids, data regarding so-called "cedes," membership data, and claims data. (*Alaska Air*, Doc. # 349 at 35). At that time, Plaintiffs represented to the court that the Blues had "agreed to give [them], at least with [regard to] those five buckets [], roughly two of those buckets from the MDL." (*Id*. at 38).

So, with the filing of the Pending Motions, the dispute over the pre-2015 structured data from the MDL has ripened. (*Alaska Air*, Docs. # 380, 382, 395, 396). Defendants refuse to produce the requested data, and they ask the court to reconsider its Order on the appropriate statute of limitations.

## II.    Legal Standard

Discovery under the Federal Rules of Civil Procedure is governed, in part, by a principle of proportionality. Rule 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The scope of discovery is broad, and its purpose is to empower parties "to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). Ultimately, this court has "broad discretion to compel or deny discovery." *United States v. Cuya*, 964 F.3d 969, 970 (11th Cir. 2020); *see also Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011).

## III.    Analysis

Plaintiffs argue that the pre-2015 data is discoverable because it is relevant to damages, liability, notice, prior conduct, the impact of acquisitions or divestitures, and Defendants' anticipated defenses. (Doc. # 380 at 6). They contend that, even if some of this data is from a pre-limitations period,  "discovery of informative data is the rule, not the exception, in antitrust cases." (*Id.*). They also assert that "a second production of a specific universe of documents imposes no oppression or undue burden." (*Id.*). Alternatively, Plaintiffs propose that if Defendants do not wish to produce the data, they could stipulate that:

> (i)    Plaintiffs' experts need not review or rely upon pre-2015 data for any reason whatsoever;
>
> (ii)   Plaintiffs' and their experts' liability and damages opinions or calculations shall not be excluded, attacked, or otherwise discounted in any way based on pre-2015 data (or its absence); and
>
> (iii)  the same overcharge percentage(s) found post-2015 may be applied for any time period prior to 2015 that is found to be within the applicable statute of limitations.

(*Id.*). Plaintiffs report that Defendants declined this proposed stipulation and further contend that, "[i]n so doing, Defendants have conceded the relevance and discoverability of the data." (*Id.*).

In their Motion for Protective Order, Defendants argue that (1) the court "already found in its February 2023 motion to dismiss decision [that] Plaintiffs do not have timely damages claims any earlier than 2015"; (2) they further request that the court revisit its order on Defendants statute

of limitations motion to dismiss and reject the functional approach to *American Pipe* tolling that the court employed in favor of a more bright line rule focused exclusively on a filed complaint; and (3) they invite the court to find that the burden of production of the pre-2015 structured data from the MDL is too great. (Doc. # 382 at 6-7). In their response to Plaintiffs' Motion, Defendants contend (1) that the November 2, 2020 Complaint is the touchstone for the limitations period and therefore Plaintiffs have no damages claims before November 2, 2016, (2) that even under a functional approach to *American Pipe* tolling, this court has already held that the ASOs had no involvement in the MDL until 2019 at the earliest; and (3) that the burden of producing the MDL data outweighs its marginal relevance because Plaintiffs have no damages claims before 2015. (Doc. # 396 at 6-7). Defendants' Motion and response are silent as to Plaintiffs' position that production of this data is unnecessary if Defendants will enter into the proposed stipulations.

In their responsive brief, Plaintiffs argue that (1) Defendants have reneged on an agreement to produce the pre-2015 structured data produced in the MDL; (2) Plaintiffs have offered to forgo production of this data so long as Defendants will promise not to use the lack of the information against Plaintiffs; (3) the precise date when Defendants were notified of the ASO claims is a disputed question of material fact; and (4) in any event, Defendants had notice of the ASOs claims as early as 2012. (Doc. # 395, generally).

A.    **The Appropriate Limitations Period**

The *Alaska Air* Complaint was filed on September 4, 2021. (*Alaska Air*, Doc. # 1). The *Jet Blue* Complaint was filed on May 2, 2022. (*Jet Blue*, Doc. # 1). The *Bed Bath & Beyond* Complaint was filed September 27, 2022. (*Bed Bath & Beyond*, Doc. # 1). Each of these Complaints asserts two counts under Section 1 of the Sherman Act. Under the Clayton Act, the statute of limitations applicable to civil claims under Sections 1 and 2 of the Sherman Act is four years. 15 U.S.C. §

5

15b; *see also Morton's Mkt., Inc. v. Gustafson's Dairy, Inc*., 198 F.3d 823, 827 (11th Cir. 1999)

("A plaintiff must file its antitrust claim within four years following a defendant's injurious act.").

If based solely on the date of filing of the Opt-Out ASOs' Complaints, the appropriate

limitations period for the *Alaska Air* Plaintiffs goes back to September 4, 2017; for the *Jet Blue*

Plaintiffs, it goes back to May 2, 2018; and for the *Bed Bath & Beyond* Plaintiffs, it goes back to

September 27, 2018. That said, under *American Pipe* tolling, "the commencement of a class action

suspends the applicable statute of limitations as to all asserted members of the class who would

have been parties had the suit been permitted to continue as a class action." *Crown, Cork & Seal*

*Co. v. Parker*, 462 U.S. 345, 353-54 (1983) (quoting *American Pipe & Construction Co. v. Utah*,

414 U.S. 538, 554 (1974)) (internal quotations marks omitted).

Defendants previously moved to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) to the

extent that the Complaints asserted claims for damages based on alleged injuries that occurred

before November 2, 2016. (*Alaska* Air, Doc. # 134). November 2, 2016 is four years before

November 2, 2020, the date on which the Fourth Amended Class Complaint in the MDL was filed

which for the first time asserted claims on behalf of self-funded or ASO accounts. (Case No. 2:13-

cv-20000-RDP, Doc. # 2616). The court denied that motion. (*Alaska Air*, Doc. # 268). The court

concluded that there was a genuine issue of material fact: when were the ASOs' claims tolled –

*i.e*., when were Defendants notified of the ASOs' substantive claims and the number and generic

identities of the ASOs. (*Id*.).

Plaintiffs assert that their claims were tolled from a much earlier date because, they argue,

earlier class action complaints in the MDL could be read to include ASOs. Defendants argue that

*American Pipe* tolling is only triggered by the filing of a Complaint that includes the current

Plaintiffs in a proposed class definition. Given the circumstances of the MDL, the court concluded

6

that the bright line approach based on the filing of a complaint did not make sense because the ASOs' claims in the MDL were settled before they were ever actually included in a complaint. To tie tolling to the filing of a complaint under these circumstances would be to elevate form over substance. The court reasoned that "the Supreme Court appears to suggest that it is not necessarily the complaint filed in a class action that determines for whom the statute of limitations is tolled." (*Id*. at 10). "[S]o long as a defendant is notified of the substantive claims being brought against them and the number and generic identities of the potential plaintiffs who may participate in the judgment, tolling is appropriate." (*Id*. (citing *California Pub. Employees' Ret. Sys*., 137 S. Ct. at 2053)). Therefore, the court asked when Defendants were notified of the substantive claims being brought against them by the ASOs and the number and generic identities of the ASOs. (*Id*. at 11-13). The court determined that there was a genuine issue of material fact about exactly when that happened. (*Id*.).

However, there is another question that must be addressed, and the court takes that issue head on. To clarify, the early complaints filed in the MDL cases, *e.g.*, *Cerven* (Case No. 2:12-cv-04169-RDP), did not toll the statute of limitations for the ASO Plaintiffs in these opt-out cases. The *Cerven* Complaint, filed on February 17, 2012 alleged a Nationwide Injunctive class defined as those "who are currently insured by any health insurance plan." (Case No. 2:12-cv-04169-RDP, Doc. # 1 at ¶ 20). The Complaint also alleged a North Carolina Damages Class defined as "persons or entities who [] have paid health insurance premiums to BCBS-NC for individual or small group full-service commercial health insurance." (*Id*. at ¶ 21). The *American Electric* Complaint, filed on June 14, 2012, alleged an Alabama Damages Class defined as "persons or entities who [] paid health insurance premiums directly to BCBS-AL for individual or small group full-service commercial health insurance." (Case No. 2:12-cv-02169-RDP, Doc. # 1 at ¶ 11).

7

The *BCBS MDL 2406* Subscriber Track Consolidated Class Complaint was filed on July 1, 2013. It alleged a Nationwide (b)(2) class defined as those "who are currently insured by any health insurance plan." (Case No. 2:13-cv-20000-RDP, Doc. # 85 at ¶ 262). All of the state-specific (b)(3) classes identified in that Consolidated Complaint are defined as "persons or entities who [] have paid health insurance premiums to [specific Blue] for individual or small group full-service commercial health insurance." (*Id*. at ¶¶ 263-279).

On December 19, 2014, the Subscriber Track Amended Consolidated Class Complaint in *BCBS MDL 2406* was filed. In that pleading, the Subscriber Plaintiffs alleged a Nationwide (b)(2) class defined as those "who are currently insured by any health insurance plan". (Case No. 2:13-cv-20000-RDP, Doc. # 244 at ¶ 277). Again, all of the state-specific (b)(3) classes alleged were defined as "persons or entities who [] have paid health insurance premiums to [specific Blue] for individual or small group full-service commercial health insurance." (*Id*. at ¶¶ 278-294).

The *Pettus Plumbing* Complaint was filed on February 22, 2016. It alleged a Nationwide Injunctive class defined as those "who are currently insured by any health insurance plan". (Case No. 3:16-00287-RDP, Doc. # 1 at ¶ 249). It alleged an Alabama Damages Class defined as "persons or entities who [] have paid health insurance premiums to BCBS-AL for individual or small group full-service commercial health insurance." (*Id*. at ¶ 250).

The *Pearce, Bevill* Complaint was filed on March 22, 2016. It alleged a Nationwide Injunctive class defined as those "who are currently insured by any health insurance plan". (Case No. 2:16-00464-RDP, Doc. # 1 at ¶ 248). It alleged an Alabama Damages Class defined as "persons or entities who [] have paid health insurance premiums to BCBS-AL for individual or small group full-service commercial health insurance." (*Id*. at ¶ 248).

On April 17, 2017, the Subscriber Track Third Amended Consolidated Class Action Complaint was filed in *BCBS MDL 2406*. In that pleading, the Subscriber Plaintiffs alleged a Nationwide (b)(2) class defined as those "who are currently insured by any health insurance plan". (Case No. 2:13-cv-20000-RDP, Doc. # 1082 at ¶ 314). As before, all of the state-specific (b)(3) classes were defined as "persons or entities who [] have paid health insurance premiums to [specific Blue] for individual or small group full-service commercial health insurance." (*Id.* at ¶¶ 315-343).

Plaintiffs argue that Defendants have, at times, used the term "insured" to include self-funded entities and therefore Defendants were on notice of the ASOs claims by the early MDL complaints. But, as this court has already noted, such a reference to the term "insured" in the early complaints would not have included self-funded entities. (*See, e.g.*, Case No. 2:13-cv-20000-RDP, Doc. # 2931 at 59-61).

The court notes that in the declaration filed in support of their Motion to Compel, Plaintiffs set forth what they characterize as examples of "evidence" or admissions that Defendants knew that ASOs were included in the early complaints in the MDL. (*Alaska Air*, Doc. # 391-1). One particular example of that "evidence" was two lines from a fifty page transcript of a hearing in *VHS Liquidating Trust v. Blue Cross of California*, No. RG21106600 (Sup Ct. CA). (*Id.* at ¶ 13). Plaintiffs point to a statement made at the hearing by Defendants' counsel, Lauren Kennedy, which they claim stands for the proposition that Defendants "did absolutely believe ASOs might be" included in  the early complaints. (*Id.*). Yet, a review of that statement in proper context reveals that the point Kennedy actually was making was this: in 2013, Defendants at first believed "ASOs might be" included in the complaint, but that they "were categorically told by Plaintiffs, 'You are reading our complaint wrong. It does *not* include ASOs.'" (Doc. # 380-14 at 39) (emphasis added).

Kennedy concluded her comments by stating that ASOs "were categorically, from 2013 into November 2020, not in the MDL." (*Id*.).

Plaintiffs also present a line from Defendants' Response to Plaintiffs' Motion to Quash Subpoenas to Proposed Class Members, filed on January 13, 2017, as "evidence" that Defendants were aware that the class alleged in the Subscriber Track Second Amended Class Complaint included ASOs. (Doc. # 391-1 at 10 (citing Case No. 2:13-cv-20000-RDP, Doc. # 946)). That document states, "The relief sought by the alleged injunctive class has nationwide implications that could impact every Blue subscriber, big and small—including ASO members." (*Id*.). But stating that the injunctive relief sought could *impact* ASOs is a far cry from stating that they were putative class members.

Moreover, even if the class action complaints reasonably could be read to include ASOs or self-funded entities in the alleged classes, as soon as the Subscribers filed their Motions for Class Certification, in April 2019, the tolling would have come to an abrupt end because ASOs are specifically excluded in the proposed class definitions. (Case No. 2:13-cv-20000-RDP, Doc. # 2407 at 1, Doc. # 2409 at 2)

On April 15, 2019, the Subscriber Track filed their Motion for Class Certification. The Motion defined the proposed Nationwide (b)(2) Injunction Class as follows:

> **All persons or entities** in the United States of America and Puerto Rico **who are currently subscribers to any health insurance plan** that is offered by any Defendant or any subsidiary, affiliate, or successor-in-interest thereof whose ability to do business in any geographically defined area is limited by a license agreement with BCBSA. **Excluded from the Class are subscribers to Administrative Services Only or Administrative Service Contracts**, the Defendants themselves and any parent, subsidiary or affiliate of any Defendant.

(Case No. 2:13-cv-20000-RDP, Doc. # 2407 at ¶ 1) (emphasis added). Subscribers proposed an alternative Alabama Injunction Class defined as:

> **All persons or entities in Alabama who are currently subscribers to any health insurance plan** that is offered by any Defendant or any subsidiary, affiliate, or successor-in-interest thereof whose ability to do business in any geographically defined area is limited by a license agreement with BCBSA. **Excluded from the Class and Subclasses are subscribers to Administrative Services Only or Administrative Service Contracts**, the Defendants themselves and any parent, subsidiary or affiliate of any Defendant.

(*Id.* at ¶ 2) (emphasis added).

The Subscribers also proposed an Alabama (b)(3) Damages Class, including two Subclasses, defined as:

> **All persons or entities who**, during the period from April 17, 2008 to December 31, 2013 (the "Class Period"), **were subscribers** to Blue Cross Blue Shield of Alabama ("BCBS-AL") **for individual, small group (up to 50 employees), or medium group (51 to 199 employees) full-service commercial health insurance (as opposed to Administrative Services Only or Administrative Contract services) (the "Class")**. This Class includes two subclasses: (1) entities who were subscribers to BCBS-AL for **medium group full-service commercial health insurance (51 to 199 employees) ("Medium Group Subclass")**; and (2) entities who, at any time during the Class Period, pursuant to BCBS-AL's cap and hold program, were charged a premium rate by BCBS-AL that exceeded the rates filed by BCBS-AL with the Alabama Department of Insurance (the "Overcharge Subclass") (together, the "Subclasses"). **Excluded from the Class and Subclasses are** individual subscribers who are 65 or over or who obtain health insurance through Medicare (including Medicare Supplemental/Gap insurance and Medicare Advantage products), **subscribers to Administrative Services Only or Administrative Service Contracts, national accounts**, Defendants themselves and any parent, subsidiary or affiliate of any Defendant.

(Case No. 2:13-cv-20000-RDP, Doc. # 2409 at ¶ 1) (emphasis added).

Furthermore, at the Final Approval Hearing on October 21, 2021, Subscribers addressed objections by ASO Home Depot to the Subscriber Settlement. (Case No. 2:13-cv-20000-RDP, Doc. # 2865 at 134). Co-Lead Subscriber Class Counsel, David Boies, started "with an analysis of why ASOs were not included in our complaint to start with." (*Id.*). Boies made these three points at the hearing:

> we spent a considerable amount of time analyzing this industry before we brought the complaint. And one of the things that we concluded was that a claim on behalf

> of ASOs was going to be much more difficult to make than a claim on behalf of the
> fully insureds. The ASOs had more competition. It was a more competitive market.
> The ASOs generally had greater bargaining power. They were larger organizations,
> and they had greater bargaining power. And even if you assumed that you were
> able to establish the same level of liability, the damages were considerably less.

(*Id.*);

> in terms of the overall class definition, we talked about insured, not ASOs. We
> talked about the insured. And the ASO people don't receive insurance. They receive
> the administrative services. And they are providing their own self-insurance, by
> definition.

(*Id.* at 149); and

> we thought that there was a much closer nexus between fully insured with a
> distinction based on size compared to ASOs, which were an entirely different
> market.

(*Id.*). Boies was even more explicit regarding the limitations periods for the ASOs:

> there was a shorter time period that they were entitled to recover damages for. The
> fully insured went all the way back to 2008. The self-funded began no earlier than
> 2015. It could be -- it could even have been more recent than that.

(*Id.* at 135). As to seeking discovery from the ASOs in the MDL, Boies stated:

> Your Honor, let me just clarify. When we took discovery, we took discovery that
> related to the entire market. And that, to some extent, included ASOs. And we were,
> as I said, trying to distinguish ASOs from the fully insured to try to show that they
> were different markets.

(*Id.* at 159). And, there was more, Boies added this:

> From the beginning, we were focusing on the fully insured market. That's what our
> papers said. That's what our discovery was about. That's what the defendants were
> on notice about. When we talked about them saying we had a big class, they were
> talking about the fully insured. They weren't talking about the ASOs. No one was
> ever suggesting that the ASOs were part of our -- part of our litigation.

During this dialogue, the court noted:

> when ASOs [were] introduced into this, that was news to me. At no point at any
> time did the Blues or the subscribers suggest to me that ASOs were ever part [or] a
> target of this litigation.

(*Id.* at 157).

When a statute of limitations commences is a question of fact. *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 828 (11th Cir. 1999), *amended in part*, 211 F.3d 1224 (11th Cir. 2000) (citing *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1169-70 (5th Cir. 1979)).[3] If there is a genuine question about when the statute of limitations began to run, a motion to dismiss based on the limitations period must be denied. *See Morton's Mkt., Inc.*, 198 F.3d at 828. That was precisely the ruling here. And, the court's reexamination of this issue reinforces its prior determination that there is a material issue of fact about when the applicable statute of limitations on Plaintiffs' claims began to run.

Interestingly, Defendants argue that (1) the court "already found in its February 2023 motion to dismiss decision [that] Plaintiffs do not have timely damages claims any earlier than 2015." (Doc. # 382 at 6). The court made no such finding. The court discussed the record evidence from 2019, which was before the Subscriber Track Fourth Amended Consolidated Class Action Complaint was filed, that showed Defendants were on notice of the ASO claims. (*Alaska Air*, Doc. # 268 at 4-5, 12-13). The court concluded that there were genuine issues of material fact about when Defendants were notified of the ASOs' substantive claims, the number of ASOs, and the generic identities of the ASOs. (*Id.* at 13). The court discussed evidence from 2019 on this issue, but that does not conclusively establish that there was no other relevant evidence on these issues prior to 2019. The court's holding was that there is a question of fact related to when Defendants were notified of the ASOs' substantive claims and the number and generic identities of the ASOs. (*Id.*). While there are still legal and factual disputes surrounding this issue, the court agrees with

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to October 1, 1981.

Boies's assessment that limitations periods for the ASOs "began [to run] no earlier than [in] 2015." (Case No. 2:13-cv-20000-RDP, Doc. # 2865 at 135).

### B.      The Relevance of the Pre-2015 Structured Data

Plaintiffs argue that the pre-2015 structured data is relevant to several issues, including damages. Defendants say the information is not relevant. In compromise, Plaintiffs have offered to forgo receiving the pre-2015 structured data if Defendants will not hold the fact that they do not have it against them. Defendants have apparently rejected this proposal and their briefing was wholly silent on this issue.

At the March 13, 2024 status conference, Defendants explained that they are not in a position to enter into Plaintiffs' proposed stipulation unless the statute of limitations issue is resolved in their favor. They explained that if Plaintiffs are allowed to seek damages back to 2012, everyone will have to assess the pre-2015 data.

Plaintiffs argue that, regardless of whether they have a damages claim going back to 2012, the data is still relevant because it allows the parties to track trends in the market. They pointed out that, in the MDL, Judge Putnam allowed discovery from BCBS-AL to go back to 2000 for "historical context" even through the damages claims only went back to 2008. (Case No. 2:13-cv-20000-RDP, Doc. # 674 at 3). Plaintiffs further noted that pre-2015 data will allow them to consider the effects of the Affordable Care Act (which was signed into law in 2010 and fully implemented in 2014).

The court certainly acknowledges that there remains a question of fact regarding the precise limitations period.  It may be necessary for the court to address this issue again after compilation of a full Rule 56 record.  But, at this point, there is nothing to suggest that the limitations period

began any earlier than in 2015. So, at present, it appears the pre-2015 structured data has only marginal relevance.

### C.    Is Production of the Pre-2015 Structured Data Proportional to the Needs of the Case?

"Proportionality under Rule 26 encompasses the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *In re: Takata Airbag Prod. Liab. Litig.*, 2016 WL 5795347, at *4 (S.D. Fla. June 24, 2016), *report and recommendation adopted sub nom. In re Takata Airbag Prod. Liab. Litig.*, 2016 WL 5844932 (S.D. Fla. June 30, 2016).

Plaintiffs contend that the pre-2015 structured data is relevant and its production is proportional because the data has already been produced in the MDL. They also argue that Defendants had already agreed to produce pre-2015 structured claims and membership data. (Doc. # 380).

Defendants argue that (1) the only reason that Plaintiffs state the pre-2015 structured data is relevant relates to pre-2015 damages, (2) but damages for that period are unavailable to Plaintiffs. (Doc. # 382 at 11). Defendants further note that the requested information contains sensitive personal healthcare and patient treatment information for millions of individuals and cannot simply be re-produced at the push of a button. Defendants have presented affidavits from their vendors in possession of this MDL data indicating that the cost of the production of the requested information could be over $1 million. (Doc. # 382-12 (estimating the cost of reproducing the MDL claims data as at least $330,000); Doc. # 382-13 (estimating the cost of reproducing the MDL membership data as at least $675,000)). This is a significant expense for the production of

information with only marginal relevance and the court concludes that it is not proportional to the needs of the case.

### D.      Plaintiffs' Alternate Proposal

The court will not order production of the pre-2015 structured data. But, based on their argument that the information is irrelevant to Plaintiffs' claims, Defendants will be barred from using the fact that Plaintiffs do not have the information to defend in this litigation.

## IV.    Conclusion

For all these reasons, (1) Plaintiffs' Motion to Compel Pre-2015 Structured Data or, Alternatively, to Declare the Rule 37 Implications of Defendants' Refusal to Produce the Data (*Alaska Air*, Doc. # 380) is **GRANTED IN PART AND DENIED IN PART**, and (2) Defendants' Motion for a Protective Order Based on the Appropriate Statute of Limitations For Plaintiffs' Claims (*Alaska Air*, Doc. # 382) is **GRANTED IN PART AND DENIED IN PART**. It is **ORDERED** as follows:

1.  Plaintiffs' Motion is **DENIED** to the extent it seeks production of the requested pre-2015 structured data from the MDL. Plaintiffs' request for relief, in the alternative, is **GRANTED**. Defendants are **BARRED** from using the fact that Plaintiffs do not have the pre-2015 structured data against Plaintiffs: (i) Plaintiffs' experts need not review or rely upon pre-2015 data; and (ii) Plaintiffs' and their experts' liability and damages opinions or calculations shall not be excluded, attacked, or otherwise impeached based on pre-2015 data (or their absence).

2.  Defendants' Motion for a Protective Order Based on the Appropriate Statute of Limitations For Plaintiffs' Claims is **GRANTED** to the extent that Defendants need not produce the requested pre-2015 structured data from the MDL. It is **DENIED** to

the extent that Defendants have requested a ruling that the applicable limitations period

is November 2, 2016 to November 2, 2020. Again, there is a genuine factual dispute

over the precise limitations period. As the court has determined, the limitations period

for ASOs began to run no earlier than in 2015. However, it will be necessary for the

parties to submit to the court Rule 56 evidence before the court can determine, as a

matter of law, the precise date when the limitations period began.

**DONE** and **ORDERED** this April 30, 2024.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE