# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| Alaska Air Group, Inc., *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>Anthem, Inc., *et al.*,<br><br>　　　　　　　Defendants. | **No. 2:21-cv-01209-RDP** |
| JetBlue Airways Corporation, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>Anthem, Inc., *et al.*,<br><br>　　　　　　　Defendants. | **No. 2:22-cv-00558-RDP** |
| Bed Bath & Beyond Inc. now known as 20230930-DK-Butterfly-1, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>Anthem, Inc., *et al.*,<br><br>　　　　　　　Defendants. | **No. 2:22-cv-01256-RDP** |

## PARTIES' JOINT STATUS REPORT
## ON NON-BLUES CLAIMS DATA AND NOTICE DISCOVERY

COME NOW, the Parties to the above-captioned actions and, pursuant to the Court's

November 15, 2024 Orders (*Alaska Air* Dkt. No. 482; *JetBlue* Dkt. No. 411; *Bed Bath & Beyond*

Dkt. No. 391), file this joint report regarding the status of (1) Plaintiffs' Motion for a Protective

Order Concerning Third Party Claims Data (*Alaska Air* Dkt. No. 450), (2) Defendants' Motion to

Compel the Production of Non-Blue Claims Data (*Alaska Air* Dkt. No. 453), and (3) Plaintiffs'

Motion to Compel Notice Discovery (*Alaska Air* Dkt. No. 458).

A.     **Non-Blues Claims Data**

The Parties filed cross motions to compel and for a protective order with respect to the production of Plaintiffs' non-Blue individual claims data.  The Court held argument concerning the cross motions at the November 13, 2024 Status Conference.  Following the conference, the Court terminated the motions and issued an order providing that:  "At the conclusion of the status conference, the parties were to conduct a workshop with the assistance of Special Master Gentle to further work through the discovery issues. In light of that workshop, the court will allow the parties additional time to meet and confer on the issues raised in the motions and try to reach a mutually satisfactory resolution."  The Court further directed that "On or before Monday, November 25, 2024, the parties SHALL file a joint report regarding the status of these issues following the workshop and further discussion. Any remaining issues that need to be resolved by the court should be identified in the joint report."

Consistent with the Court's order, the Parties have further discussed a potential resolution of the dispute.  Defendants proposed that the Parties stipulate that:  (1) Defendants will seek Plaintiffs' non-Blue claims data exclusively from nonparties, including the other insurers with whom Plaintiffs contracted for commercial health insurance and/or data aggregators who maintain copies of those nonparty insurers' claims data, and will seek nothing from Plaintiffs; and (2) Plaintiffs will not oppose the production of their claims data in this case by these nonparties.  Plaintiffs decline Defendants' proposal.

*Plaintiffs' Position:*  Plaintiffs advised Defendants in writing that they declined Defendants' proposal for the reasons set forth in their motion papers—specifically because (i) Plaintiffs believe that granular, individual claims data is not proportional to the needs of this case in light of the other discovery Defendants are receiving, (ii) Plaintiffs have had no involvement in Defendants' dialogue with non-Blue insurers concerning the production of Plaintiffs' granular

2

claims data, and (iii) identifying appropriate data fields for production will be a burdensome and time-consuming process.  Plaintiffs note that, since the November 13 Hearing, they have been in contact with Aetna, Cigna and United, who have each advised in writing that they are awaiting a ruling by the Court on the pending motions before taking any further steps with respect to the production of any individual claims data.  Their respective positions are set forth in the footnote below,[1] and confirm that this is far from simply a matter of "just pushing send."  Accordingly, the discovery of Plaintiffs' non-blue individual claims data remains an issue to be resolved by the Court.

Finally, Plaintiffs note their objection to Defendants' multi-page submission on this issue—which is a plain attempt to obtain supplemental briefing on this discovery matter by way of this Joint Report.  Not only is "Defendants' Position" far outside the scope of the Court's directive to provide a *status report*, it was sprung on Plaintiffs well after business hours (at 7:45 CT) on November 25—hours from the filing deadline.  Defendants have had a draft of the Joint

---

[1]  United has advised as follows: "United has not reached an agreement with Defendants on Defendants' Request for Production 1 (claims data for Plaintiffs), which as Defendants themselves have stated would require a burdensome data extraction that is not as simple as just pushing a button. United also has raised its own concerns and objections in addition to the relevancy issues raised by Plaintiffs.  United is prepared to continue negotiations on Defendants' claims data request once the Court has issued its ruling on the parties' motions, including regarding what data is available and at what cost and burden for United."

Cigna has advised, in relevant part: "Cigna served its objections to the subpoena on April 10, 2024, including on relevance and burden grounds.  As we discussed with both parties, Cigna understands that the Court is considering the relevance of the types of non-party data requested in the subpoena, and therefore Cigna's position in regards to defendants' first subpoena request has always been that a production would be premature before receiving an order or guidance from the Court on this issue.  Assuming the Court finds this data relevant, Cigna committed to meeting and conferring with defendants about the production of claims data for the 21 specified ASO clients from 2015 to 2022 in a reasonable time frame (i.e. at least 2 weeks), with the understanding that defendants agreed to compensate Cigna for its analyst's time for pulling such data.   Before Cigna could agree to anything, there are many aspects of this data request that would take time to iron out, such as data fields and any data limitations."

Aetna has advised: "Aetna's position is that assuming the judge deems the data relevant, it will not object to the reproduction of anonymized claims data by HCCI/NORQ for the relevant time period, subject to the data being designated as receiving the highest confidentiality protection available under the Protective Order as well as certain other confidentiality and retention conditions. If the court deems the claims data as not relevant, then we do not want the data to be produced by HCCI/NORQ."

Report from Plaintiffs since before 12PM CT on Friday, November 22. Notwithstanding the fact that this is joint submission, they declined to provide any portions, comments or edits to the Joint Report whatsoever until the eleventh hour on the day the Joint Report is due. Defendants have turned the report into an opportunity for further legal briefing, with pages of argument renewing arguments that the Court has already seen. Plaintiffs requested that Defendants remove their eleventh-hour arguments as outside the scope of the Court's directive, and correspondingly offered to remove Plaintiffs' brief summary of their communication to Defendants explaining why Plaintiffs declined Defendants' stipulation proposal. Defendants stated at 9:57 PM CT that they would not file the joint statement without argument. Defendants further objected to the fact that Plaintiffs contacted non-Blues to confirm in writing their positions for the purposes of this status report.

*Defendants' Position:*[2] *First,* Plaintiffs' non-Blue claims data is highly relevant because the cost of claims that Plaintiffs self-fund when they purchase an administrative services only ("ASO") product is by far the largest portion of the cost Plaintiffs incur. That cost is determined by the breadth of the network and provider discount rates offered by the insurer from whom Plaintiffs purchase an ASO product. Non-Blue claims data therefore are necessary to calculate the total cost Plaintiffs paid for comparable healthcare services when they purchased from competing commercial health insurers, including Aetna, Cigna, Humana and United, and for Defendants' experts to evaluate the prices Plaintiffs would pay for comparable healthcare services in the alleged but-for world. Non-Blue claims data also are relevant to assessing other factors relevant to competition in the actual and alleged but-for worlds, including the breadth and

---

[2] In their portion, Plaintiffs complain about the drafting history of this report, but it is Plaintiffs themselves who delayed in providing their draft and who have been lobbying nonparties to undermine progress on this issue. Defendants instead focus here on the substance of this critical issue and on moving discovery forward.

depth of an insurer's provider network for the services a Plaintiff's members use in the locations in which they use them, the insurer's ability to negotiate discounts for out-of-network provider claims and the speed with which the insurer processes claims.  These analyses require disaggregated claims data that shows the cost of the specific healthcare services used, where they are used, by which member demographics they are used and whether the services were offered in- or out-of-network.  This detail is needed to control for confounding variables unrelated to competitive conditions in the market, like the location, age and health of the member population or one-off incidents like the COVID-19 pandemic, and generate like-to-like comparisons without confounding noise in the data.  This is why Defendants' analyses cannot be performed with ad hoc, unstructured documents that provide only the total amount a Plaintiff paid for its members' claims in a particular time period or a snapshot of claims data at some particular point in time and without full context.  And this is why Plaintiffs have themselves insisted on structured financial data.  *See* Nov. 13, 2024 Hr'g Tr. at 26:14 (*Alaska Air* Dkt. No. 486) ("He did say that, didn't he?").  Defendants would suffer significant prejudice without access to the non-Blue claims data.  That is because these data constitute the most significant component of the cost that Plaintiffs actually incur to secure healthcare for their members.  Without understanding Plaintiffs' total healthcare costs when purchasing ASO services from the Blues' competitors, it is impossible to properly analyze the but-for world.  In fact, Plaintiffs look at the total cost of care when deciding which ASO products to obtain.  Moreover, excluding non-Blue claims data would mean that Plaintiffs could artificially inflate their alleged damages without giving the Blues any opportunity to rebut those damages using the competitive realities of the market.  Defendants would thus be greatly prejudiced if Plaintiffs are allowed to cherry-pick the only cost data that comes into these actions.  At the November 13, 2024 Status Conference, the Court asked whether

the "lion's share" of non-Blue claims data in the MDL was produced in the Provider Track, as opposed to the Subscriber Track. Nov. 13, 2024 Hr'g Tr. at 33:22-24. While the Court is correct that nonparty insurers produced some claims data in the Provider Track and not the Subscriber Track of the MDL, Plaintiffs here are differently situated than the fully insured subscribers in the MDL. In fully insured arrangements, the insurer underwrites and pays the claim; as a result, these claim costs are already accounted for in the premium that the subscriber pays and do not need to be separately addressed. By contrast, in self-funded arrangements, such claim costs are borne directly by the account itself. This means the only way to know the total cost to the account of selecting a given carrier is to consider **both** the fee charged by that carrier **and also** the provider discount rates the account is able to access through that carrier. A higher fee, for example, might be more than offset by higher provider discount rates. Thus, claims data from Defendants' most significant competitors are relevant and necessary in these actions in a way they weren't in the Subscriber-Track MDL: here, the Parties cannot do a true cost comparison without them.

*Second*, Plaintiffs cannot claim burden because, under Defendants' proposal, nonparty insurers and/or data aggregators will produce the requested claims data, not Plaintiffs. Defendants served these nonparty insurers with Rule 45 subpoenas for Plaintiffs' non-Blue claims data months ago, and almost all have agreed to produce the requested data directly or consented to the production of the data by the National Opinion Research Center ("NORC"), which maintains copies of the data. Those productions have not happened primarily because of Plaintiffs' relevance objections; several nonparty insurers said they would not agree to produce until the Court resolves the Parties' claims data dispute. In addition, to the extent Plaintiffs' purported "burden" is that they would have to "host[] and process[] such data", they can choose

not to do so.  This should not be a reason to prevent nonparties from producing non-Blue claims data.

*Finally*, Plaintiffs' position that "Defendants' demands for [the non-Blue claims data] are belated" is specious.  Defendants first requested that Plaintiffs produce non-Blue claims data nearly two years ago on February 8, 2023.  When Plaintiffs objected in full to this request, Defendants sought the data directly from the nonparty insurers, serving subpoenas on each beginning in 2024 and obtaining their agreement to produce.  The obstacle to these productions has been *Plaintiffs*, not Defendants.  Plaintiffs objected to the Special Master to the production of claims data and subsequently filed a motion for a protective order.  Since the Court terminated the motions, Plaintiffs have begun reaching out to the nonparty insurers to voice their continued objections to the productions.  Defendants' claims data requests are not "belated", and the fact that non-Blue claims data has not been produced is because Plaintiffs have sought to prevent its production.

**B.   Notice Discovery**

Plaintiffs moved to compel five categories of discovery that Plaintiffs contend is relevant to whether the Blues were on "notice" of ASO claims:

1.  Liability insurer materials reflecting Defendants' notice of ASO claims, including Defendants' communications with their liability insurers and deposition transcripts from Defendants' coverage litigation with their liability insurers;

2.  ASO depositions taken in the MDL;

3.  Responses to Plaintiffs' Interrogatory Nos. 10, 11 and 14;

4.  Responses to Requests for Admission asking about "evidentiary bases" for Defendants' statements in various filings and proceedings; and

5.  Demands asserted and offers made for ASO injunctive and monetary relief.

The Parties briefed these items and the Court held argument on them at the November 13, 2024 Status Conference, at which the Court provided the Parties with guidance. Pursuant to that guidance, the Parties have made progress on narrowing their disputes, although a handful of items remain for the Court's resolution.

1.  **Liability Insurer Materials Reflecting Defendants' Notice of ASO Claims,[3] Including Defendants' Communications with Their Liability Insurers and Deposition Transcripts from Defendants' Coverage Litigation with Their Liability Insurers**

<u>Communications with Insurers</u>: The Parties dispute the extent to which Defendants' communications with their insurers regarding ASOs are privileged. Based on the Court's guidance, the Parties continue to discuss the scope of what will be included on a privilege log so that Plaintiffs may test Defendants' privilege claims on a subset of insurer communications.

<u>Coverage Litigation Deposition Transcripts</u>: With respect to the Capital 30(b)(6) transcript, Defendants have conferred with Capital and Atlantic (the insurer who took the deposition), and they have withdrawn their objection to its release under the protective order in *Cap. BlueCross v. Atl. Specialty*, Case No. 1:20-cv-02299-CCC (M.D. Pa. 2020). Capital has completed this production. With respect to other depositions taken by Defendants' insurers in other coverage litigation, Defendants maintain their objections. The Parties intend to continue to workshop this issue with the Special Master and, if no resolution is reached, request a formal recommendation from the Special Master for the Court's consideration.

---

[3] Defendants dispute this characterization.

### 2.    ASO Depositions Taken in the MDL

Plaintiffs have requested eight deposition transcripts from the MDL which they believe may be ASO depositions: [4]  American Electric Motor Company, Avantgarde Aviation, Saginaw Pipe Company, Cowin Equipment Company, Samford University, Perdido Beach Resort, Columbus Brick Company and General Mills.[5]  Defendants reviewed these transcripts and determined that only four were ASO depositions:  Samford University, Perdido Beach Resort, Columbus Brick Company and General Mills.  Defendants also are prepared to produce the MDL deposition transcript of Plaintiff Dollar General.  Pursuant to the amended protective order in the MDL, the applicable procedure for production requires the following:

> If counsel for a Party wishes to disclose Confidential Material that was produced by a third-party subject to the Protective Order, or extracts, summaries, or information derived therefrom, to any person not designated in paragraphs 11-13 of the Qualified Protective Order (Doc. # 550), they must proceed in the following manner: the names of the person(s) to whom the Confidential Material is to be disclosed and a description of the Confidential Material to be disclosed to such person(s) shall be provided in writing to (a) lead counsel for all Parties and (b) counsel for the third-party that produced the Confidential Material at issue twenty-one (21) days in advance of disclosure to afford counsel an opportunity to object to disclosure.

Supplement to Qualified Protective Order, No. 2:13-cv-20000-RDP, MDL Dkt. No. 1488 at 2. In light of the robust protective order in these proceedings, and Plaintiffs' request for these transcripts, Defendants request that the Court simply order the production of the five ASO transcripts identified above, with accompanying exhibits, and Defendants will thereafter provide notice to the third parties' counsel, giving any person 21 days to object to Defendants' production.  Plaintiffs here join in that request.

---

[4] Plaintiffs reserve the right to seek the production of additional ASO depositions from the MDL to the extent they are identified at a later date.  Defendants reserve the right to oppose on all grounds.

[5] This deposition was of an individual in her 30(b)(1) capacity, rather than a 30(b)(6).

### 3.    Interrogatory Nos. 10, 11 and 14

Plaintiffs have propounded three interrogatories regarding Defendants' purported notice

of ASOs' substantive claims:

> Interrogatory No. 10:  Identify any instance in which a Defendant stated that any injunctive relief class alleged in any subscriber class action complaint filed in the MDL encompassed or may encompass Self Funded Plans. In answering the interrogatory, identify the date of such statement, the exact substance of such statement, where such statement was made, and which Defendant made such statement. If the statement was publicly made, please identify where Plaintiffs may locate such statement.

> Interrogatory No. 11:  Identify all instances in which Self Funded Plan members were referenced by a Defendant as being 'insured' or 'covered' by a Blue Plan or being provided commercial healthcare insurance by a Defendant, including any reference to a Self Funded Plan or Self Funded Plan member receiving commercial healthcare insurance from a Defendant.

> Interrogatory No. 14:  Identify every instance between February 7, 2012 and July 2019 in which MDL subscriber class counsel told any Defendant, orally or in writing, that Self-Funded Plans were not included in any putative class in the MDL, including every instance in which MDL subscriber class counsel told any Defendant that 'You are reading our complaint wrong. [the [sic] subscriber class complaint] does not include ASOs' (Doc. # 380-14 at 39 in 21-cv-1209) or, that the reason they were seeking discovery from Self-Funded Plans was to distinguish Self-Funded Plans from fully-insured plans (*see* October 21, 2021 hearing transcript at 159:18-160:1 in *In re Blue Cross Blue Shield Antitrust Litig.*, 13-cv-20000 (N.D. Ala.)).

The Court heard argument on these interrogatories and provided the Parties guidance.  With this

guidance, the Parties were able to reach agreement on Interrogatory No. 14, but need further

assistance from the Special Master to resolve their dispute over Interrogatory Nos. 10 and 11.

*Plaintiffs' Position:*  Under the supervision of the Special Master, the Court directed

Plaintiffs to rephrase the interrogatories and for Defendants to answer those rephrased

interrogatories.  Nov. 13, 2024 Hr'g Tr. at 67-68.  Both sides committed to doing so.  *Id*.

Toward that end, Plaintiffs have offered reformulations of the interrogatories to reduce

the burden on Defendants by relieving them of having to identify "any instance," "all instances"

and "every instance" requested in the interrogatories.  Accordingly, with respect to Interrogatory

No. 10, to relieve Defendants of the burden of having to identify "any instance" in which

Defendants acknowledged ASOs were part of the injunctive relief class, Plaintiffs have asked

Defendants to simply acknowledge that they stated on numerous occasions from the inception of

and throughout the MDL that ASOs were part of the injunctive relief class.  Similarly, Plaintiffs

have rephrased their request in Interrogatory No. 11.  Instead of asking Defendants to identify all

instances in which Defendants referred to Plaintiffs as "insureds," Plaintiffs simply ask

Defendants to acknowledge that throughout their corporate lifecycles, including at the time of the

*Cerven* complaint, Defendants referred to ASOs as being "insured" by them.

    *Defendants' Position:*  The information sought by Interrogatory Nos. 10 ("any instance"

in which a Defendant stated that a Subscriber MDL injunctive class did or may include Self

Funded Plans) and 11 ("all instances" in which a Defendant referred to Self Funded Plans as

being insured or covered by them) is entirely irrelevant to the statute of limitations issues, as this

Court and others have consistently held.  *Alaska Air* Dkt. No. 435 at 9; *In re Blue Cross Blue*

*Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1097-98 (11th Cir. 2023) ("It is not clear from

the *Cerven* complaint's definition of the injunctive class that self-funded accounts are included

because they are not necessarily 'insured by [a] health insurance plan.'  Other parts of

the *Cerven* complaint confirm that self-funded accounts were not included in the damages or

injunctive classes."); *VHS Liquidating Trust, et al. v. Blue Cross of California, et al.*, No. RG21-

106600, Order re Motion for Reconsideration and Motion for Sanctions, filed Oct. 2, 2023

(rejecting, *inter alia*, plaintiffs' argument that Blues' statement that they provide "coverage for

nearly 100 million people" means ASOs must have been included in the first MDL subscriber

complaint and rejecting arguments that Blues "knew" the injunctive relief class included ASOs

(arguments asserted in Plaintiffs' Motion to Reconsider Portion on Motion to Strike Ruling, filed

Aug. 21, 2023, at 11-15)).  In addition to their irrelevance, having Defendants identify "any" or "all" instances of such statements poses a facially unreasonable burden disproportionate to the needs of these actions.  As the Court confirmed, there is no need for a response to these interrogatories as served.  Nov. 13, 2024 Hr'g Tr. at 65:20-22 ("I'm not going to make them answer that interrogatory [No. 10].  That's just like – I don't know how you can answer that interrogatory."); *id.* at 66:11-14 ("You might want to go back to the drawing board on the interrogatory [No. 11] that doesn't try to cover every fish in the ocean but tries to figure out which fish are in the boat.").  To the extent Plaintiffs seek anything short of a full list of "any" and "all" instances, Plaintiffs already have—and have cited—examples of instances in which Defendants have made statements that Plaintiffs characterize as including ASOs.  *See, e.g.*, Plaintiffs' Motion to Compel Pre-2015 Data, *Alaska Air* Dkt. No. 380, at 12-23; Plaintiffs' Motion to Compel Notice Discovery, *Alaska Air* Dkt. No. 458, at 18-21.  Defendants cannot further answer these interrogatories in any meaningful way because we disagree with how Plaintiffs characterize the facts.  The alternatives Plaintiffs raise above for Interrogatory Nos. 10 and 11 are not compromise positions offered after the Status Conference; they are the very "alternatives" Plaintiffs posed in their reply brief in support of their motion to compel (*Alaska Air* Dkt. No. 474 at 7), and they are not real alternatives.

4.    **Response to Requests for Admission Asking About "Evidentiary Bases" for Defendants' Statements in Various Filings and Proceedings**

Plaintiffs served several RFAs requesting that Defendants admit that they had an evidentiary basis for Defendants' prior statements regarding ASOs being part of the MDL proceedings.  Defendants objected to these requests.  Neither the requests nor the objections were addressed during argument at the Status Conference.  Plaintiffs no longer seek resolution of these RFAs at this time and both sides reserve all rights.

5.    **Demands Asserted and Offers Made for ASO Injunctive and Monetary Relief**

Plaintiffs asked Defendants in Interrogatory No. 12 to identify any instances in which ASOs made a demand (or Defendants made an offer) for ASO injunctive relief or damages. Defendants objected to the interrogatory.  Plaintiffs also served requests for admission asking whether demands/offers were made on behalf of ASOs at specific points in time based on a list of settlement events filed by Defendants.  Defendants also objected to these requests.

The Parties acknowledge that at the Status Conference, the Court stated that all such discovery is shielded by the mediation privilege.

*Plaintiffs' Position:*    Plaintiffs request that the Court memorialize this holding, as Plaintiffs wish to guard against a sword/shield dynamic arising later in these proceedings.

*Defendants' Position:*  Plaintiffs have proffered no bases for some kind of "sword/shield" ruling or a ruling limiting what Defendants may offer into evidence.  Defendants have never attempted here to reveal the substance of mediation-protected material, so any reference to a "sword/shield" concept would be confusing concepts and creating issues where none exist.  The Court should simply deny Plaintiffs' motion to compel a response to Interrogatory No. 12, as the Court indicated it is inclined to do (*see* Nov. 13, 2024 Hr'g Tr. at 34:5-10; 74:2-24), because it intrudes into mediation-protected material.

13

Respectfully submitted this 25th day of November, 2024.

Dated:  November 25, 2024

Respectfully submitted,

By: */s/ Benjamin T. Presley*
Jay M. Ezelle
H. Thomas Wells, III
Benjamin T. Presley
Starnes Davis Florie LLP
100 Brookwood Place, 7th Floor
Birmingham, AL 35209
Tel: (205) 868-6000
jezelle@starneslaw.com
twells@starneslaw.com
bpresley@starneslaw.com

*Counsel for all Plaintiffs in the Alaska Air
and JetBlue cases.*

By: */s/ Paul E. Slater*
Paul E. Slater
Joseph M. Vanek
David P. Germaine
Eamon P. Kelly
SPERLING & SLATER, LLC
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Tel:    (312) 641-3200
pes@sperling-law.com
jvanek@sperling-law.com
dgermaine@sperling-law.com
ekelly@sperling-law.com

By: */s/ Phillip F. Cramer*
Phillip F. Cramer
SPERLING & SLATER, LLC
1221 Broadway, Suite 2140
Nashville, TN 37203
Tel: (312) 641-3200
Fax: (312) 641-6492
pcramer@sperling-law.com

*Counsel for JetBlue Airways Corporation
and JetBlue Airways Group Health
Insurance Plan, The Kraft Heinz
Company, Kraft Heinz Group Benefits
Plan, Kraft Heinz Retiree Group Benefits
Plan, and North Central States Regional
Council of Carpenters' Health Fund*

*Alaska Airlines, Inc.; Alaska Airlines, Inc.
Welfare Benefit Plan; Alaska Air Group,
Inc. Welfare Benefit Plan; Horizon Air
Industries, Inc.; Horizon Air Industries,
Inc. Welfare Benefit Plan; Employee
Benefit Plan for Employees of Horizon Air
Industries, Inc.; Employee Benefit Plan
for Full-Time and Part-Time Employees
Horizon Air Industries, Inc.; Big Lots,
Inc.; Big Lots Associate Benefit Plan;
Conagra Brands, Inc.; ConAgra Foods,
Inc. Welfare Benefit Wrap Plan; The
Federal Express Corporation; FedEx
Freight, Inc.; The Federal Express
Corporation Group Health Plan; The
FedEx Corporation Group Health Plan;
FedEx Corporation Retiree Group Health
Plan; The Federal Express Corporation
Retiree Group Health Plan; The Federal
Express Corporation Group Health Plan
for Pilots; The Federal Express
Corporation Retiree Group Health Plan
for Pilots; FedEx Group Health Plan;
JetBlue Airways Corporation and JetBlue
Airways Group Health Insurance Plan;
Kellogg Company; Kellogg Company
Welfare Benefit Plan; Kellogg Company
Retiree Welfare Benefit Plan; The Kraft
Heinz Company, Kraft Heinz Group
Benefits Plan, Kraft Heinz Retiree Group
Benefits Plan; McLane Company, Inc.
McLane Company, Inc. Welfare Plan;
Meijer Inc. including its affiliates Meijer
Great Lakes LP, Meijer Stores LP, and
Town Total Health LLC; Meijer Health
Benefits Plan; North Central States
Regional Council of Carpenters' Health
Fund; Publix Super Markets, Inc.; Publix*

15

*Super Markets, Inc. Group Health Benefit
Plan; United Natural Foods, Inc.,
including its affiliates SUPERVALU,
INC.. and Unified Grocers, Inc.
("UNFI"); UNFI Health and Welfare
Plan; Indiana/Kentucky/Ohio Regional
Council of Carpenters Welfare Fund;
Ohio Carpenters' Health Fund; SEIU
Local 1 & Participating Employers
Health Trust; The Local No. 1 Health
Fund; Plumbers' Welfare Fund, Local
130, U.A.; The Sheet Metal Workers
Local 73 Welfare Fund; Chicago Painters
and Decorators Welfare Fund; The
Carpenters and Joiners Welfare Fund;
Heartland Health & Wellness Fund;
GuideStone Financial Resources;
GuideStone group Plan; GuideStone
Personal Plan; Church Pension Group
Services Corporation; General Board of
Pension and Health Benefits of the United
Methodist Church; Concordia Plan
Services; Concordia Health Plan; Portico
Benefits Services (the Evangelical
Lutheran Church in America's benefit
board); Christian Brothers Services (a
church plan benefits board created by the
Christian Brothers religious order);
Christian Brothers Employee Benefit
Trust; The Board of Pensions of the
Presbyterian Church U.S.A.; The Benefits
Plan of the Presbyterian Church (U.S.A.);
Employee Benefits Plan of MBM
Corporation; and the MBM Corporation*

By: */s/ J. Scott Hickman*
J. Scott Hickman
Eric G. Osborne
Micah N. Bradley
L. Webb Campbell
Christopher C. Sabis
SHERRARD ROE VOIGT &
HARBISON, PLC
150 3rd Avenue South, Suite 1100
Nashville, TN 37201
Tel: (615) 742-4200

16

Fax: (615) 742-4539
shickman@srvhlaw.com
eosborne@srvhlaw.com
mbradley@srvhlaw.com
wcampbell@srvhlaw.com
csabis@srvhlaw.com

*Counsel for The Kraft Heinz Company,
Kraft Heinz Group Benefits Plan, Kraft
Heinz Retiree Group Benefits Plan, and
North Central States Regional Council of
Carpenters' Health Fund; Counsel for
The Boeing Company; Employee Benefits
Plan Committee of The Boeing Company,
as the plan administrator and named
fiduciary of The Boeing Company Master
Welfare Benefit Plan; Bridgestone
Americas, Inc.; Bridgestone Americas,
Inc. Employee Group Insurance Plan;
Bridgestone Americas, Inc. Retiree
Medical Plan; Dollar General
Corporation; Dollar General Health Plan
(a component of the Dollar General
Corporation Employee Benefits Plan);
The Federal Express Corporation; FedEx
Freight, Inc.; The Federal Express
Corporation Group Health Plan; The
FedEx Corporation Group Health Plan;
FedEx Corporation Retiree Group Health
Plan; The Federal Express Corporation
Retiree Group Health Plan; The Federal
Express Corporation Group Health Plan
for Pilots; The Federal Express
Corporation Retiree Group Health Plan
for Pilots; FedEx Group Health Plan;
Tractor Supply Company; Tractor Supply
Medical Plan*

By: */s/ Jason A. Zweig*
Jason A. Zweig
BARTKO LLP
1 South Wacker Drive
36th Floor
Chicago, IL 60606
Tel: (415) 956-1900
Fax: (415) 956-1152

jzweig@bartkolaw.com

*Counsel for JetBlue Airways Corporation and JetBlue Airways Group Health Insurance Plan, McLane Foodservice Distribution, Inc., and Employee Benefits Plan of MBM Corporation*

*Counsel for Alaska Airlines, Inc.; Alaska Airlines, Inc. Welfare Benefit Plan; Alaska Air Group, Inc.; Alaska Air Group, Inc. Welfare Benefit Plan; Horizon Air Industries, Inc.; Horizon Air Industries, Inc. Welfare Benefit Plan; Employee Benefit Plan for Employees of Horizon Air Industries, Inc.; Employee Benefit Plan for Full-Time and Part-Time Employees Horizon Air Industries, Inc.; American Electric Power Service Corporation; American Electric Power System Comprehensive Medical Plan; Big Lots, Inc.; Big Lots Associate Benefit Plan; Burlington Northern Santa Fe LLC (f/k/a Burlington Northern Santa Fe Corp.); Burlington Northern Santa Fe Corporation Group Benefits Plan; Burlington Northern Santa Fe Corporation Welfare Benefit Trust; FedEx Corporation; The Federal Express Corporation; FedEx Freight, Inc.; The Federal Express Corporation Group Health Plan; The FedEx Corporation Group Health Plan; FedEx Corporation Retiree Group Health Plan; The Federal Express Corporation Retiree Group Health Plan; The Federal Express Corporation Group Health Plan for Pilots; The Federal Express Corporation Retiree Group Health Plan for Pilots; FedEx Group Health Plan; McLane Company, Inc.; McLane Company, Inc. Welfare Plan; Employee Benefits Plan of MBM Corporation; and the MBM Corporation*

*/s/ William J. Blechman*
William J. Blechman
Joshua B. Gray
Elizabeth B. Honkonen
Kenny Nachwalter, P.A.
Four Seasons Tower - Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
wjb@knpa.com
jgray@knpa.com
ebh@knpa.com

*Counsel for US Foods, Inc.*

*Counsel for Albertsons Companies Inc.;
New Albertsons L.P.; Albertson's LLC;
New Albertson's Inc.; Safeway Inc.;
Albertsons Companies, Inc. Health and
Welfare Plan, f/k/a Albertson's LLC
Health & Welfare Plan; New Albertson's
Inc. Health and Welfare Plan; Hy-Vee
Inc.; Hy-Vee and Affiliates Benefit Plan
and Trust; The Kroger Co.; 84.51 LLC;
Murray's Cheese LLC; The Kroger Co.
Health and Welfare Benefit Plan; 84.51
LLC Health & Welfare Plan; Walgreen
Co.; US Foods Holding Corporation; US
Foods, Inc.; US Foods Health & Welfare
Plan; Walgreen Health and Welfare Plan
(Plan No. 501) f/k/a Walgreen Major
Medical Expense Plan*

*/s/ Jon Corey*
Jon Corey
MCKOOL SMITH, PC
1999 K Street, NW
Suite 600
Washington, D.C. 20006
(202) 370-8300
jcorey@mckoolsmith.com

John Briody
James Smith
David Schiefelbein

Daniel Hendler
MCKOOL SMITH, PC
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
(212) 402-9400
jbriody@mckoolsmith.com
jsmith@mckoolsmith.com
dschiefelbein@mckoolsmith.com
dhendler@mckoolsmith.com

Lew LeClair
Gary Cruciani
MCKOOL SMITH, PC
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4000
lleclair@mckoolsmith.com
gcruciani@mckoolsmith.com

Brenton K. Morris
BENTON, CENTENO & MORRIS, LLP
2019 Third Avenue North
Birmingham, Alabama 35203
(205) 278-8000
bmorris@bcattys.com

*Counsel for Bed Bath & Beyond Inc. now known as 20230930-DK-Butterfly-1, Inc.; Automobile Club of Southern California; Darling Ingredients Inc.; Griffin Industries, LLC; Dillard's, Inc.; Halliburton Energy Services, Inc.; G4S Secure Solutions (USA), Inc.; Kimberly-Clark Corporation; Lincoln National Corporation; Nestlé USA, Inc.; Perdue Farms Inc.; Pacific Gas and Electric Company; PG&E Corporation; RTX Corporation; Raytheon Company; Rockwell Collins, Inc.; Rite Aid Corporation; Rite Aid Hdqtrs. Corp.; Sterling Jewelers Inc.; Zale Corporation; Zale Delaware, Inc.; Starbucks Corporation; Tyson Foods, Inc.; SRZ Liquidating Trust; Transform Midco LLC; and General Motors LLC*

Dated:  November 25, 2024

Respectfully submitted,

By */s/ David H. Korn*

Karin A. DeMasi
Lauren R. Kennedy
David H. Korn
Lillian S. Grossbard
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY  10001
Tel: (212) 474-1000
Fax: (212) 474-3700
kdemasi@cravath.com
lkennedy@cravath.com
dkorn@cravath.com
lgrossbard@cravath.com

*Lead Counsel for the Blue Cross Blue Shield System; Counsel for Defendants Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Arizona, Inc.; GuideWell Mutual Holding Corporation; Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Kansas City; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina; BlueCross BlueShield of South Carolina; BlueCross BlueShield of Tennessee, Inc.; Blue Cross Blue Shield of Wyoming; California Physicians' Service d/b/a Blue Shield of California; Capital Blue Cross; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.; Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and*

*Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Triple-S Management Corporation; Triple-S Salud, Inc.*

Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Elizabeth Jose
W. David Maxwell
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC  20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
elizabeth.jose@hoganlovells.com
david.maxwell@hoganlovells.com

*Counsel for Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of*

Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF & BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL  35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Arizona, Inc.; Blue Cross and Blue Shield of Kansas City; BlueCross BlueShield of South Carolina; Blue Cross and Blue Shield of Wyoming; Capital Blue Cross; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue*

*Oregon*

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC  29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

*Counsel for Elevance Health f/k/a Anthem, Inc.,
and all of its named subsidiaries in this action;
Louisiana Health Service & Indemnity Company
(Blue Cross and Blue Shield of Louisiana);
BCBSM, Inc. (Blue Cross and Blue Shield of
Minnesota); BlueCross BlueShield of South
Carolina; Horizon Healthcare Services, Inc.
(Horizon Blue Cross and Blue Shield of New
Jersey); Blue Cross & Blue Shield of Rhode
Island; Blue Cross and Blue Shield of Vermont;
Cambia Health Solutions, Inc.; Regence Blue
Shield of Idaho; Regence Blue Cross Blue Shield
of Utah; Regence Blue Shield (of Washington);
Regence Blue Cross Blue Shield of Oregon; Blue
Cross & Blue Shield of Mississippi, a Mutual
Insurance Company; Wellmark of South Dakota,
Inc. (Wellmark Blue Cross and Blue Shield of
South Dakota); Wellmark, Inc. (Wellmark Blue
Cross and Blue Shield of Iowa); Hawaii Medical
Service Association (Blue Cross and Blue Shield of
Hawaii); Triple-S Salud, Inc; Defendants Blue
Cross and Blue Shield of Florida, Inc.; Blue Cross
and Blue Shield of Massachusetts, Inc.; BlueCross
BlueShield of Tennessee, Inc.*

*Shield of Montana; Caring for
Montanans, Inc., f/k/a Blue Cross and
Blue Shield of Montana, Inc.; Highmark
Health; Highmark Inc., f/k/a Highmark
Health Services; Highmark West
Virginia Inc.; Highmark BCBSD Inc.;
California Physicians' Service d/b/a
Blue Shield of California; Wellmark of
South Dakota, Inc. (Wellmark Blue
Cross and Blue Shield of South Dakota);
Wellmark, Inc. (Wellmark Blue Cross
and Blue Shield of Iowa); Hawaii
Medical Service Association (Blue
Cross and Blue Shield of Hawaii)*

Carl S. Burkhalter
MAYNARD NEXSEN PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL  35203
Tel: (205) 254-1000
Fax: (205) 254-1999
cburkhalter@maynardnexsen.com

Pamela B. Slate
HILL CARTER FRANCO COLE &
BLACK, P.C.
425 South Perry Street
Montgomery, AL  36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*With Cravath, Swaine & Moore LLP,
counsel for Defendant Blue Cross Blue
Shield of Alabama*

Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

*Counsel for Elevance Health f/k/a Anthem, Inc.,
and all of its named subsidiaries in this action;
Blue Cross and Blue Shield of North Carolina;
Louisiana Health Service & Indemnity Company
(Blue Cross and Blue Shield of Louisiana);
BCBSM, Inc. (Blue Cross and Blue Shield of
Minnesota); Horizon Healthcare Services, Inc.
(Horizon Blue Cross and Blue Shield of New
Jersey); Blue Cross & Blue Shield of Rhode
Island; Cambia Health Solutions, Inc.; Regence
Blue Shield of Idaho; Regence Blue Cross Blue
Shield of Utah; Regence Blue Shield (of
Washington); Regence Blue Cross Blue Shield of
Oregon*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON
LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
Tel: (206) 626-7714
Fax: (206) 299-0414
gpayton@kilpatricktownsend.com

*Counsel for Defendant Premera Blue Cross,
d/b/a Premera Blue Cross Blue Shield of Alaska*

Brian K. Norman
SHAMOUN & NORMAN, LLP
1800 Valley View Lane, Suite 200
Farmers Branch, TX  75234
Tel: (214) 987-1745

Chicago, IL  60654
Tel: (312) 862-2000
Fax: (312) 862-2200
jzeiger@kirkland.com

*Counsel for Defendants Health Care
Service Corporation, an Illinois Mutual
Legal Reserve Company, including its
divisions Blue Cross and Blue Shield of
Illinois, Blue Cross and Blue Shield of
Texas, Blue Cross and Blue Shield of
New Mexico, Blue Cross and Blue
Shield of Oklahoma, and Blue Cross and
Blue Shield of Montana; Caring for
Montanans, Inc., f/k/a Blue Cross and
Blue Shield of Montana, Inc.; Highmark
Health; Highmark Inc., f/k/a Highmark
Health Services; Highmark West
Virginia Inc.; Highmark BCBSD Inc.;
Highmark Western and Northeastern
New York Inc. (except with respect to
claims by Rite Aid Corporation and its
affiliates and Bed, Bath & Beyond Inc.
now known as 20230930-DK-Butterfly-
1, Inc. and its affiliates, and discovery to
RTX Corporation and its affiliates and
General Motors Company and its
affiliates)*

Jonathan M. Redgrave
REDGRAVE, LLP
4800 Westfields Blvd, Suite 250
Chantilly, VA  20151
Tel: (703) 592-1155
Fax: (612) 332-8915
jredgrave@redgravellp.com

*Additional Counsel for HCSC and
Highmark Defendants and California
Physicians' Service d/b/a Blue Shield of*

Fax: (214) 521-9033
bkn@snlegal.com

H. James Koch
ARMBRECHT JACKSON LLP
RSA Tower, 27th Floor
11 North Water Street
Mobile, AL  36602
Tel: (251) 405-1300
Fax: (251) 432-6843
hjk@ajlaw.com

*Counsel for Defendants CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.*

M. Patrick McDowell
Norman E. "Benje" Bailey, Jr.
BRUNINI, GRANTHAM, GROWER
& HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100
Jackson, MS  39201
Tel: (601) 948-3101
Fax: (601) 960-6902
pmcdowell@brunini.com
bbailey@brunini.com

Cheri D. Green
BLUE CROSS & BLUE SHIELD OF
MISSISSIPPI, A MUTUAL INSURANCE
COMPANY
P.O. Box 1043
Jackson, MS  39215
Tel: (601) 932-3704
cdgreen@bcbsms.com

*Counsel for Defendant Blue Cross & Blue Shield of Mississippi, a Mutual Insurance Company*

*California*

Todd M. Stenerson
Brian C. Hauser
ALLEN OVERY SHEARMAN
STERLING US LLP
1101 New York Avenue N.W.
Washington, DC  20005
Tel: (202) 508-8000
Fax: (202) 508-8100
todd.stenerson@aoshearman.com
brian.hauser@aoshearman.com

Rachel Mossman Zieminski
ALLEN OVERY SHEARMAN
STERLING US LLP
2601 Olive Street, Suite 1700
Dallas, TX 75201
Tel: (214) 271-5777
Fax: (214) 271-5778
rachel.zieminski@aoshearman.com

Sarah L. Cylkowski
Thomas J. Rheaume, Jr.
BODMAN PLC
1901 Saint Antoine Street
6th Floor at Ford Field
Detroit, MI  48226
Tel: (313) 259-7777
Fax: (734) 930-2494
scylkowski@bodmanlaw.com
trheaume@bodmanlaw.com

Andy P. Campbell
A. Todd Campbell
Yawanna N. McDonald
CAMPBELL PARTNERS LLC
505 North 20th Street, Suite 1600
Birmingham, AL  35203
Tel: (205) 224-0750

Alan D. Rutenberg
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007
Tel: (202) 672-5491
arutenberg@foley.com

Diane R. Hazel
FOLEY & LARDNER LLP
1400 16th Street, Suite 200
Denver, CO 80202
Tel: (720) 437-2034
dhazel@foley.com

Ryan M. Hodinka
BALCH & BINGHAM, LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3464
Fax: (205) 488-5848
rhodinka@balch.com

*Counsel for Defendant USAble Mutual Insurance
Company, d/b/a Arkansas Blue Cross and
Blue Shield and as Blue Advantage Administrators
of Arkansas*

Robert R. Riley, Jr.
RILEY & JACKSON, P.C.
3530 Independence Drive
Birmingham, AL 35209
Tel: (205) 879-5000
Fax: (205) 879-5901
rob@rileyjacksonlaw.com

*Counsel for Defendants Blue Cross and Blue
Shield of Florida, Inc.; Blue Cross and Blue Shield
of Massachusetts, Inc.; BlueCross BlueShield
of Tennessee, Inc.*

Edward S. Bloomberg

Fax: (205) 224-8622
andy@campbellpartnerslaw.com
todd@campbellpartnerslaw.com
yawanna@campbellpartnerslaw.com

*Counsel for Defendants Blue Cross and
Blue Shield of Michigan; Blue Cross
and Blue Shield of Vermont*

John DeQ. Briggs
Jeny M. Maier
Kenina J. Lee
AXINN, VELTROP & HARKRIDER,
LLP
1901 L Street, N.W.
Washington, DC 20036
Tel: (202) 912-4700
Fax: (202) 912-4701
jbriggs@axinn.com
jmaier@axinn.com
klee@axinn.com

Kail J. Jethmalani
Victoria J. Lu
AXINN, VELTROP & HARKRIDER,
LLP
114 W 47th Street
New York, NY 10036
Tel: (212) 728-2200
Fax: (212) 728-2201
kjethmalani@axinn.com
vlu@axinn.com

Stephen A. Rowe
Aaron G. McLeod
ADAMS AND REESE LLP
1901 Sixth Avenue North, Suite 3000
Birmingham, AL 35203
Tel: (205) 250-5080
Fax: (205) 250-5034

John G. Schmidt Jr.
Anna Mercado Clark
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY  14203
Tel: (716) 847-8400
Fax: (716) 852-6100
ebloomberg@phillipslytle.com
jschmidt@phillipslytle.com
aclark@phillipslytle.com

Morris Wade Richardson
(ASB-8581-S78M)
Charles T. Grimes
(ASB-3224-S77C)
RICHARDSON CLEMENT PC
22 Inverness Center Parkway, Suite 500
Birmingham, Alabama 35242
Tel: (205) 729-7000
Fax: (205) 905-7009
wade@richardson.law
charley@richardson.law

*Counsel for Defendant Excellus Health Plan, Inc.,
d/b/a Excellus BlueCross BlueShield*

steve.rowe@arlaw.com
aaron.mcleod@arlaw.com

*Counsel for Defendants Independence
Hospital Indemnity Plan, Inc. f/k/a
Independence Blue Cross; Independence
Health Group, Inc.*

Tracy A. Roman
Jay P. DeSanto
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel: (202) 624-2500
Fax: (202) 628-5116
troman@crowell.com
jdesanto@crowell.com

Sarah Gilbert
Honor Costello
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Ave.
New York, NY 10001
Tel: (212) 223-4000
Fax: (212) 223-4134
sgilbert@crowell.com
hcostello@crowell.com

John M. Johnson
Brian P. Kappel
LIGHTFOOT FRANKLIN & WHITE
LLC
The Clark Building
400 20th Street North
Birmingham, AL  35203
Tel: (205) 581-0700
Fax: (205) 581-0799
jjohnson@lightfootlaw.com

bkappel@lightfootlaw.com

*Counsel for Defendants Blue Cross and
Blue Shield of Nebraska; GoodLife
Partners, Inc.; Blue Cross of Idaho
Health Service, Inc.; Blue Cross and
Blue Shield of Kansas, Inc.; Blue Cross
Blue Shield of North Dakota*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 25th day of November, 2024, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all Counsel of record.


*/s/ David H. Dowling*
David H. Dowling